In re HIGHWAY TRUCK DRIVERS
AND HELPERS, TEAMSTERS
LOCAL NO. 107, Debtor.

Bankruptcy No. 87–05211F.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 23, 1989.

See also, D.C., 98 B.R. 698.

Michael L. Temin, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for Ronaldo Frances Gajkowsky.

David S. Fishbone, Ciardi Fishbone & DiDonato, Philadelphia, Pa., for debtor, Highway Truck Drivers and Helpers, Teamsters Local No. 107.

Judith B. Chomsky, Philadelphia, Pa., for Bernard Bygott, John Mahalis, Gregory Patton, John O'Toole and Joseph Snyder.

Robert C. Cohen, Markowitz & Richman, Philadelphia, Pa., for Pa. Conference of Teamsters, Teamsters Joint Council Teamsters Joint Council Retirement Trust.

Nicholas Lepore, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Teamsters Pension Fund Trust Teamsters Health & Welfare Fund.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The debtor, an unincorporated association serving as a labor union for its members, has filed a motion requesting that its fifth amended plan of reorganization[1] be confirmed without the necessity of approval of a disclosure statement. Various parties who had filed proofs of claim object to confirmation, contending either that a disclosure statement is required because their claims are impaired or that the plan does not provide for their claims and thus violates the provisions of 11 U.S.C. § 1129. The debtor counters by objecting to the claims. One set of claimants has filed a motion to convert this chapter 11 case to one under chapter 7.

As will be discussed below, these disputes present various questions touching upon the power of bankruptcy courts to determine claims, the finality to be accorded state court judgments, and the meaning of the bankruptcy term "impairment" under 11 U.S.C. § 1124.[2] Although the facts are a little unusual, they fortunately are not in dispute.

### I.

The debtor filed a voluntary petition under chapter 11 on October 16, 1987. Prior to that filing it was a defendant in two distinct lawsuits. The first suit was commenced in state court in 1980 by Robert and Francis Gajkowski, Robert Schipske, and William and Jean Abate (hereinafter the "Gajkowski plaintiffs"). This suit was the product of violence that occurred on the debtor's picket line, and was brought against a number of defendants, including the debtor. Damages were sought against the debtor on a theory of vicarious liability.

In March, 1984, judgment was entered in that case against the debtor in the approximate amount of $1.2 million. On appeal, the Pennsylvania Superior Court reversed and set aside the judgment. On further appeal to the Pennsylvania Supreme Court, the lower court judgment was reinstated by order dated August 31, 1987. The debtor then sought reconsideration from the state Supreme Court, which was denied. Faced with execution on the judgment, the union filed this chapter 11 bankruptcy case

---

1. Subsequent to the hearing held on these various disputes, the debtor filed a Fifth Amended Plan of Reorganization. Its terms do not materially differ from the Fourth.

2. My resolution of these disputes enables me to bypass, for now, the applicability to a labor union debtor of the absolute priority rule found in section 1129(b). In addition, I need not reach an issue alluded to by the debtor: that a decision of the Third Circuit Court of Appeals, *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446 (3d Cir.1982), is incorrect. While I acknowledge that the *St. Croix* holding has been criticized, *see* McCafferty, *The Effect of Bankruptcy on the Debtor's*

*Pending Litigation,* 93 Com.L.J. 214 (1988), it has been followed by a number of other circuit courts. *See, e.g., Freeman v. Commissioner of Internal Revenue Service,* 799 F.2d 1091 (5th Cir.1986); *Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d 206 (2d Cir.1986); *Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60 (6th Cir.1983). *St. Croix,* of course, is binding upon the courts of this circuit. *See In re Augustus Court Associates, Ltd.,* 43 B.R. 352 (Bankr.E.D. Pa.1984). Furthermore, as I suggested in an unpublished memorandum in this case on August 24, 1988, at 10–11 n. 11, statutory literalism and valid policy reasons support the Court of Appeal's interpretation of § 362(a).

on October 16, 1987. Shortly after filing for bankruptcy, the debtor filed a second motion for reconsideration; this motion was granted. Argument in the Pennsylvania Supreme Court was set for April 1988.

In 1984, a second, unrelated suit was brought against the debtor in the District Court for the Eastern District of Pennsylvania by Bernard Bygott, John Mahalis, Gregory Patton, John O'Toole and Joseph Snyder (hereinafter the "Bygott plaintiffs"). This suit alleged a breach by the debtor of its statutory duty of fair representation. On June 10, 1986, judgment was entered in favor of the plaintiffs in the amount of $49,877.50. The debtor appealed and on June 25, 1987, a panel of the Third Circuit Court of Appeals reversed and vacated the judgment. Nos. 86–1456, 86–1027, 1987 WL 54392, 1987 U.S.App. Lexis 8058, *withdrawn* July 27, 1987. The plaintiffs then moved to have the entire Court of Appeals consider the matter *en banc,* which motion was granted. The panel decision was vacated, and reargument was scheduled before the whole court. Before the matter could be reargued, the debtor filed its chapter 11 petition; upon notification of the bankruptcy filing, the Court of Appeals stayed any further consideration of the appeal, pursuant to 11 U.S.C. § 362(a).

In February, 1988, the Bygott plaintiffs moved this court to dismiss or convert the bankruptcy case pursuant to 11 U.S.C. § 1112(b). They argued that the debtor had no intention of reorganizing under chapter 11 but had filed bankruptcy merely to pursue its state court appeal of the Gajkowski judgment without posting a supersedeas bond. Moreover, the Bygott plaintiffs contended that this initial lack of good faith in filing was exacerbated by the debtor's subsequent pursuit of the state court appeal without first obtaining relief from the automatic stay. *See Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446 (3d Cir.1982). *Accord, Teachers Ins. & Annuity Ass'n of America v. Butler,* 803 F.2d 61 (2d Cir. 1986).

In *In re Clinton Centrifuge, Inc.,* 72 B.R. 900 (Bankr.E.D.Pa.1987), I concluded that the filing of a bankruptcy case which was triggered by the debtor's inability to post a supersedeas bond was not *per se* in bad faith. The additional fact that here the debtor may have violated the automatic stay was not, in my view, sufficient to warrant dismissal or conversion of the case. However, rather than deny the motion to dismiss or convert I directed the debtor to file a plan and disclosure statement within thirty days so as to insure that the bankruptcy process was not used solely for delay. The debtor complied with the directive; contested matters then arose involving the adequacy of the disclosure statement and viability of the plan.

Having been alerted to the holding of *St. Croix* by the Bygott motion, the debtor then filed a motion for relief from the stay *nunc pro tunc* so that it might continue with its request for reconsideration from the Pennsylvania Supreme Court. (No request was made by either the debtor or the Bygott plaintiffs, then or now, for relief to continue with the federal court appeal.) By unpublished memorandum I granted relief from the stay prospectively only; moreover, I granted the Gajkowski plaintiffs relief from the stay as well. The debtor appealed from this order granting relief and the Gajkowski plaintiffs cross-appealed; on April 7, 1989, the District Court affirmed the order granting relief from the automatic stay as to both camps. Apparently the Gajkowski plaintiffs have pursued their appeal to the Third Circuit.

The August, 1987 state Supreme Court decision holding the debtor vicariously liable to the Gajkowski plaintiffs had been decided by a 4 to 3 vote. On September 28, 1988 the Supreme Court, again by a 4 to 3 vote, granted the debtor's second request for reconsideration, vacated its earlier order which had reversed the Superior Court, and entered a new order affirming the Superior Court. Thus, the Supreme Court reversed its earlier decision and, in essence, vacated any judgment against the debtors. *See Gajkowski v. International Brotherhood of Teamsters,* 519 Pa. 320, 548 A.2d 533 (1988). Subsequently, the Pennsylva-

nia Supreme Court denied the Gajkowski plaintiffs' request for reconsideration and the United States Supreme Court denied their petition for certiorari.[3]

The debtor thereafter amended its reorganization plan to eliminate any distribution to the Gajkowski plaintiffs and filed the instant objection to their proofs of claim. As to the Bygott plaintiffs, the fifth and latest amended plan provides that the debtor escrow 120% of the judgment amount and continue with the federal appellate review process. While all other creditors are to be paid in full on the effective date of the plan, the Bygott plaintiffs are to receive payment only if their judgment is affirmed on appeal. If it is not, they are to receive no distribution. Furthermore, the debtor has filed an objection to the Bygott plaintiffs' proofs of claim arguing that they have no claim, given the panel decision of the Third Circuit.

## II.

### A.

[1] The dispute between the debtor and the Bygott plaintiffs regarding the validity of their claims may be quickly resolved. The Bygott plaintiffs hold valid claims in the amount of the district court judgment as the panel decision overturning the judgment has been vacated. The fact that a challenge to the judgment was pending on appeal prepetition does not deprive the judgment of finality for purposes of claim preclusion. *See, e.g., Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir.1988); *Martin v. Malhoyt,* 830 F.2d 237, 264 (D.C.Cir. 1987); *Teachers Ins. & Annuity Ass'n of America v. Butler,* 803 F.2d at 66; *Restatement (Second) of Judgments* § 13, comment f (1982); 1B Moore, *Moore's Federal Practice,* ¶ 0.416(3) (1988); 18 Wright, Miller & Cooper, *Federal Practice & Procedure,* § 4433 (1981). Until overturned by the Third Circuit *en banc,* this judgment

must be viewed as binding upon this bankruptcy court. *E.g., Heiser v. Woodruff,* 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946); *Teachers Ins. & Annuity Ass'n of America v. Butler. See also In re Caucus Distributors, Inc.,* 83 B.R. 921, 929 (Bankr. E.D.Va.1988).

As a result, the debtor's challenge to the proofs of claim filed by the Bygott plaintiffs must be rejected. It also follows that the debtor's request to proceed to confirmation without disseminating a disclosure statement should, in this instance, be denied. I agree with the debtor that if all creditors were unimpaired by its plan of reorganization, there would be no need for voting and no need for a disclosure statement as all creditors presumptively would vote in favor of the plan. 11 U.S.C. § 1126(f). *See In re Shaffer Furniture Co.,* 68 B.R. 827, 831 (Bankr.E.D.Pa.1987). *See also In re Entz-White Lumber & Supply, Inc.,* 850 F.2d 1338, 1340 n. 3 (9th Cir.1988) (only impaired classes may vote on a proposed plan); *In re Feldman,* 53 B.R. 355, 357 (Bankr.S.D.N.Y.1985) (same).

Here, though, the claims of the Bygott plaintiffs are not unimpaired within the meaning of 11 U.S.C. § 1124.[4] At the commencement of this bankruptcy case, the Bygott creditors possessed a valid judgment and judgment lien upon which execution had not been stayed. All appellate proceedings thereafter were stayed by the debtor's bankruptcy filing. The debtor's fifth amended plan calls for the escrow of 120% of the judgment amount, the continuation of the debtor's appeal, and payment of the claim only if the debtor's appeal is unsuccessful. Clearly, this plan provision does not entitle the Bygott creditors to payment in full of their allowed claims on the effective date of the plan. *See* 11 U.S.C. § 1124(3).[5]

---

3. If the debtor's narrow interpretation of section 362(d) and *St. Croix* had been accepted by either this court or the district court, the Gajkowski plaintiffs would have been barred from seeking further appellate review after the Supreme Court reversal.

4. The provisions of § 1124(2) are inapplicable to the instant dispute.

5. The plan defines the effective date as the second business day following the day the order of confirmation becomes final. (Article One, 12.)

It is a closer question whether the plan leaves unaltered the legal rights of the Bygott claims, 11 U.S.C. § 1124(1). In essence, the debtor's plan leaves the determination of the Bygott claims to a non-bankruptcy forum, and provides adequate protection for their payment should the claims be allowed.[6] There is some dispute whether Congress intended such a plan provision to deprive a creditor of its right to vote for or against the plan. *Compare In re American Solar King Corp.*, 90 B.R. 808 (Bankr.W.D.Tex.1988) *with In re Spirited, Inc.*, 23 B.R. 1004 (Bankr.E.D.Pa.1982). In addition, though, the plan has at least two provisions which "impair" the rights of the Bygott plaintiffs such that they should have the opportunity to vote. First, the plan establishes a supersedeas, so that the Bygott plaintiffs may not execute upon their judgment while the appeal is pending. Second, to the extent the automatic stay prevents the debtor from pursuing its appeal, *see St. Croix*, the plan provides the debtor relief from this prohibition.[7]

Both of these provisions amount to an alteration of the legal rights of the Bygott creditors. As has been noted:

> The Bankruptcy Code defines "impairment" broadly, thereby maximizing creditor participation in the confirmation process, i.e., even the smallest impairment nonetheless entitles a creditor to participate in voting.

*In re American Solar King Corp.*, 90 B.R. at 819.

Thus, I conclude that the debtor's Fifth Amended Plan of Reorganization affects the rights of the Bygott creditors, making them impaired creditors, and mandating a disclosure statement. As a result, the debtor's motion for immediate confirmation must be denied.

### B.

■ The debtor's proposed treatment of the Bygott claims causes those creditors to revive their motion to convert this case to one under chapter 7. The Bygott plaintiffs vigorously argue that this plan provides evidence that this bankruptcy was filed in bad faith and thus conversion is appropriate pursuant to 11 U.S.C. § 1112(b).[8] They view this case as affording the debtor the opportunity to obtain the protection of title 11 while overturning the Gajkowski judgment. Having obtained its desired result, the debtor seeks to return to a non-bankruptcy forum without paying all its creditors. The Bygott creditors consider this improper.

To the extent the Bygott plaintiffs are focusing on the terms of the plan, they are confusing the "good faith" required to commence a bankruptcy case with the "good faith" required of every chapter 11 plan. 11 U.S.C. § 1129(a)(3). *See In re March*, 83 B.R. 270, 275 (Bankr.E.D.Pa. 1988). Failure to comply with the latter means only that confirmation is denied, although the failure to obtain confirmation may ultimately result in conversion. *See* 11 U.S.C. § 1112(b)(2), (5).

■ The question of confirmation is not before me at this time. The Bygott plaintiffs have asserted that their claims are impaired and that they are entitled to vote on this plan; I have just agreed. In the

---

6. The assertion of the Bygott plaintiffs that this bankruptcy court, and not the Court of Appeals, should determine whether their claims are allowed is somewhat disingenuous. They have no desire to have the merits of the claims relitigated here, and indeed argue that claim preclusion bars relitigation.

7. Although not raised by any party, I note that the Bygott plaintiffs and other creditors may also have their rights impaired by Article Four of the Fifth Amended Plan. On one hand, the plan states that various classes of claims shall be paid on the effective date or retain their rights under a prepetition security agreement. Article Four, however, states that no default

may be declared unless debtor's counsel is first provided with 90 days notice and that secured creditors need an order of this court before executing. These Article Four restrictions may be sufficient to impair the rights of Bygott and non-Bygott creditors.

8. Although the term "bad faith" is not mentioned in subsection 1112(b), most courts have interpreted this subsection to include the concept. *See generally In re Clinton Centrifuge; In re Victory Constr. Co.*, 9 B.R. 549 (Bankr.C.D. Cal.1981), *order vacated on other grounds*, 37 B.R. 222 (9th Cir. BAP 1984).

context of the forthcoming confirmation hearing I can address the good faith of this plan, if necessary. *See* Bankr.R. 3020(b)(2). Indeed, one court has recently suggested that some of the issues raised by the Bygott creditors, perhaps, may be addressed by reference to the phrase "fair and equitable," should confirmation be sought under § 1129(b). *Matter of D & F Construction, Inc.*, 865 F.2d 673 (5th Cir.1989).

The Bygott plaintiffs offer no evidence justifying a finding of "bad faith" under § 1112(b) other than the terms of a proposed plan, which still may be amended or for which confirmation may be denied. *See In re Clinton Centrifuge.* Therefore, the motion to convert shall be denied at this time.

### III.

The disputes between the debtor and the Gajkowski plaintiffs reduce to one issue: do the plaintiffs hold valid proofs of claim? If not, the objection to their proofs should be sustained and their challenge to the debtor's plan rejected. Similarly, if they hold valid claims, the debtor's objections thereto must be denied. In addition, if the Gajkowski claims are valid, the plan either does not provide for their allowed unsecured claims and so discriminates against them in violation of § 1129, or, if it does provide for payment in full on the effective date, the plan is not feasible as the debtor does not have the ability to make such a payment. In either event the debtor's request for immediate confirmation would have to be denied.

■ The debtor's position on the critical issue is simply stated: the Supreme Court of Pennsylvania's reversal of its earlier decision vacated any obligation the debtor has to the Gajkowski plaintiffs. The putative creditors' position is almost as simple: the

Pennsylvania Supreme Court had no power to reverse its earlier decision because a state court rule of appellate procedure, Pa. R.A.P. 2547, limits a party to filing only one request to a Pennsylvania appellate court for reconsideration. Here, of course, the debtor prevailed on its second motion for reconsideration.

Since the Pennsylvania Supreme Court addressed this very point (*viz.*, its authority to hear a second reconsideration request) when it issued its September, 1988 decision, the plaintiffs are suggesting that this bankruptcy court, through its power to determine claims, may overrule the state's highest court. I must disagree. The interpretation of Pa.R.A.P. 2547, and the effect upon it of Pa.R.A.P. 105,[9] are state law issues for which the highest state court is the definitive arbiter. *See Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Wallach v. City of Pagedale,* 376 F.2d 671 (8th Cir.1967). *Cf. Terrace v. Thompson,* 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923) (the United States Supreme Court is without authority to review and revise the construction affixed to a state statute as to a state matter by the court of last resort of the state).

■ Furthermore, the principle of res judicata, or claim preclusion, prevents relitigation of this point. Federal courts apply this doctrine to state court proceedings not only to reduce needless litigation, but also to foster comity between the two systems. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Davis v. U.S. Steel Supply,* 688 F.2d 166 (3d Cir. 1982), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983); *Mack v. Penn Hills,* 547 F.Supp. 863 (W.D.Pa.1982).

The doctrines of res judicata and collateral estoppel[10] are implemented by the full

---

**9.** In pertinent part, Rule 105(a) states that "[i]n the interest of expediting decision, or for other good cause shown, an appellate court may ... disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction."

**10.** The Third Circuit, following the lead of the United States Supreme Court in *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) and the Second Restatement of Judgments, has instructed that the terms "claim preclusion" and "issue preclusion" are to replace the often confusing terms res judicata and collateral estoppel. *Gregory v. Chehi,* 843 F.2d 111 (3d Cir.1988).

faith and credit doctrine, codified at 28 U.S.C. § 1738, which provides that every court shall give to the judicial proceedings of another jurisdiction the same full faith and credit that would be accorded in the jurisdiction from which they are taken. Thus, to the extent that a judgment precludes further litigation in the jurisdiction in which it was rendered, further litigation is precluded elsewhere. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). As the Third Circuit held in *Gregory v. Chehi*, 843 F.2d 111 (3d Cir.1988), a "federal court applying preclusion principles is bound by the Full Faith and Credit Statute, and must give a prior state judgment the same effect as would the adjudicating state." *Id.*, at 116. *See also Davis v. United States Steel Supply*, 688 F.2d at 170.

■ To avoid this insurmountable hurdle, the plaintiffs labor creatively to posture their challenge as one arising under the due process clause of the Federal Constitution, Amendment XIV. As they have had every opportunity within the state appellate process to assert their contentions, they rely here on substantive rather than procedural due process. I shall assume, for purposes of argument, that the due process clause may limit in some fashion the substantive right of a state supreme court to reconsider and reverse a judgment previously entered.[11]

The question thus becomes whether a bankruptcy court, under the guise of proof of claim litigation, is the appropriate forum for the assertion of this due process right. I must conclude that, on the facts presented, it is not.

■ Title 28 of the United States Code, section 1257, states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had,

may be reviewed by the [United States] Supreme Court." This statutory language has been interpreted as precluding federal review of state court civil actions through any other legal proceeding. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Thus, lower federal courts, including bankruptcy courts, possess no power to sit in direct review of state decisions. *E.g., Atlantic C.L.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Stern v. Nix*, 840 F.2d 208 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 77, 102 L.Ed.2d 53 (1988); *Martinez Rivera v. Trias Monge*, 587 F.2d 539 (1st Cir.1978). This result is required even where a state court judgment may be in error. *Aristocrat Health Club, Inc. v. Chaucer*, 451 F.Supp. 210 (D.C.Conn.1978); *Adkins v. Underwood*, 370 F.Supp. 510 (N.D.Ill.1974), *aff'd,* 520 F.2d 890 (7th Cir.1975), *cert. denied,* 423 U.S. 1017, 96 S.Ct. 452, 46 L.Ed.2d 389 (1975). Clearly, then, the merits of the Gajkowski challenge to the constitutionality of the state Supreme Court's actions cannot be heard here. *See Rooker,* 263 U.S. at 415, 44 S.Ct. at 150. Indeed, the Gajkowski plaintiffs petitioned for review by writ of certiorari, which petition was denied by the Supreme Court.

I am mindful that the policies behind the principle of claim preclusion must be considered in light of possible countervailing policies implanted by Congress in title 11. Furthermore, bankruptcy courts are equitable in nature, and should exercise equitable powers to avoid collusion and fraud. *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.*, 249 F.2d 221, 224 (2d Cir.1957). Thus, in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the court refused to allow a claim in

**11.** The plaintiffs were unable to locate any decision expressly so holding. Indeed, there are a number of decisions, which the Gajkowski plaintiffs view as distinguishable, which may actually hold to the contrary. *E.g., Gondeck v. Pan American World Airways, Inc.*, 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21 (1965); *United States v. Ohio Power Co.*, 353 U.S. 98, 77 S.Ct. 652, 1 L.Ed.2d 683 (1957); *Cahill v. New York, N.H. &*

*H.R.Co.,* 351 U.S. 183, 76 S.Ct. 758, 100 L.Ed. 1075 (1956). It is interesting to note that the three United States Supreme Court decisions cited above were entered over vigorous dissents, with the dissenters arguing that the concept of finality of judgments would be severely impaired by the Court's reconsideration. The Gajkowski plaintiffs here make much the same argument.

bankruptcy where the claim was based on a state court judgment, but the judgment was obtained only by means of a "planned and fraudulent scheme." *Pepper,* 308 U.S. at 312, 60 S.Ct. at 248. This power of the bankruptcy court—"to sift the circumstances surrounding any claim to see that injustice or unfairness is not done," *id.,* at 307–08, 60 S.Ct. at 245–46—has been upheld and tempered by subsequent decisions. *See generally In re Garafano,* 99 B.R. 624 (Bankr.E.D.Pa.1989) (J. Scholl); *In re Farrell,* 27 B.R. 241 (Bankr.E.D.N.Y.1981). In *Heiser v. Woodruff,* 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946), for example, the Court noted that the bankruptcy court's equitable power to disregard the principle of res judicata may be exercised only where the prior decisions did not address the later allegations of fraud or collusion. *Heiser,* 327 U.S. at 738, 66 S.Ct. at 858. As I find that the state supreme court was vested with jurisdiction, and the Gajkowski plaintiffs have not suggested that any fraud was involved when the Pennsylvania Supreme Court reversed its earlier decision—only that the reconsideration itself was improper—I am bound by the state supreme court decision. *Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). *Cf. Teachers Ins. & Annuity Ass'n. of America v. Butler* (bankruptcy court is bound by decision of district court to allow claim against the estate).

I derive further support for my conclusion from the recent affirmance by the District Court of my decision to grant the debtor relief from the automatic stay to pursue its appeal. If the Pennsylvania Supreme Court had no power to reconsider its August 1987 decision, then it would have been an abuse of discretion for this court to have allowed the debtor to expend estate funds on futile state appellate litigation. In fact, in their cross-appeal of my decision, the Gajkowski plaintiffs made this very argument to the district court, which argument was rejected.

Therefore, I hold that any challenge to the September, 1988 decision of the Pennsylvania Supreme Court was limited to the United States Supreme Court. This court is not empowered to rectify errors, if any, in the order entered by the highest state court. As the judgment of the Gajkowski plaintiffs has been vacated, they hold no claim against the estate. The debtor's objection to these creditors' proofs must be sustained, and the challenge to confirmation rejected.

An appropriate order shall be entered.

## ORDER

AND NOW, this 23 day of May, 1989, upon consideration and for the reasons set forth in the accompanying Memorandum Opinion, the debtor's motion to proceed to confirmation of its fifth amended plan of reorganization without the necessity of an approved disclosure statement is DENIED. The debtor's challenge to the proofs of claim filed by the Bygott plaintiffs is DENIED; the debtor's objection to the Gajkowski plaintiffs' proofs of claim is SUSTAINED. The Bygott creditors' revived motion to convert this case to one under chapter 7 is also DENIED.