**In re AUDRE, INC., Debtor.**

**In re AUDRE RECOGNITION SYSTEMS, INC., Debtor.**

**Bankruptcy No. 95–10048–B11.**

United States Bankruptcy Court,
S.D. California.

Nov. 6, 1996.

Victor A. Vilaplana, Sheppard, Mullin, Richter & Hampton, San Diego, CA, for Debtors.

Mary M. Testerman, Office of the United States Trustee, Department of Justice, San Diego, CA, for U.S. Trustee.

Ronald K. Van Wert, Newport Beach, CA, for Creditor Catherine Casey.

Robert R. Barnes, Allen, Matkins, Leck, Gamble & Mallory, San Diego, CA, for Creditors Steven Greenberg, Steven Sanford, ARSTK, Inc. and Artificial Intelligence Corp.

Dean Kirby, Jr., Hovey, Kirby, Thornton & Hahn, San Diego, CA, for Official Creditors Committee (AUDRE).

Radmila A. Fulton, Law Office of Radmila A. Fulton, San Diego, CA, for Official Creditors Committee (ARSI).

## AMENDED MEMORANDUM DECISION AND ORDER ON MOTION TO DISALLOW FAMILY LAW CLAIMS OR TO ESTIMATE AT ZERO

PETER W. BOWIE, Bankruptcy Judge.

Audre Recognition Systems, Inc. (Debtor in 95–10046), and Audre, Inc. (debtor in 95–10048) bring motions to disallow the Catherine Casey Family Court judgment, or in the alternative to estimate the Family Court claims at zero for all purposes. The two cases are being jointly administered.

The State Family Court entered judgment against both Thomas Casey and Audre Recognition for in excess of $11 million. Audre, Inc., the wholly owned subsidiary of Audre Recognition, was not a party to the Family Court action, and no state court judgment has been rendered as to it.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## I. AUDRE RECOGNITION SYSTEMS, INC. (ARSI)

Catherine Casey, et al., have filed proofs of claim against ARSI based upon the entry of the Family Court judgment. ARSI moves to have the claim disallowed on the grounds that the Family Court did not have subject matter jurisdiction to enter a judgment against ARSI, and because "there is no legal or factual basis for imposing liability" on ARSI. In the alternative, ARSI asks that the claims based on the Family Court judgment be estimated at zero. In support of that argument, ARSI contends the judgment debt is both contingent and unliquidated because California law does not accord a judgment issue preclusive effect when it is pending on appeal.

Taking the latter issue first, the Court disagrees that the corollary of California's denial of issue preclusive effect to a judgment pending on appeal is that the claim represented by the judgment is therefore either contingent or unliquidated.

The Court has had recent occasion to visit these issues, first in the related case *In re Casey,* 198 B.R. 910 (Bankr.S.D.Cal.1996), and second, *In re Keenan,* 201 B.R. 263 (Bankr.S.D.Cal.1996). Any analysis must begin with the applicable statute.

■ Section 502(c) of Title 11, United States Code, provides in pertinent part:

(C) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case. . . .

Resort to § 502(c) is only appropriate, however, when the claim is either contingent or unliquidated. *In re Rhead,* 179 B.R. 169, 172 (Bankr.D.Az.1995); *In re Casey,* 198 B.R. 910–916 (Bankr.S.D.Cal.1996); *Matter of Continental Airlines,* 981 F.2d 1450, 1461 (5th Cir.1993).

**492**

ARSI's argument that the Family Court claim is contingent is premised on a quirk of California law, different from that of most other states, that a judgment entered by a California court is not a final judgment for purposes of issue preclusion so long as the time to appeal has not run or an appeal is pending. This Court acknowledges that California courts deny issue preclusive effect under such circumstances. However, in this Court's view, the fact that issue preclusion would not apply does not make the claim based on the judgment of the Family Court either contingent or unliquidated. The fact that the time to appeal such a judgment has not run, or an appeal is pending, does not make the judgment invalid. To the contrary, under California law possessors of such a judgment could levy and execute on assets of the judgment debtor absent a stay of some sort. *In re Casey,* 198 B.R. 910, 916 (Bankr. S.D.Cal.1996).

As this Court observed in *Keenan:*
The Bankruptcy Code does not define the terms contingent or unliquidated. *In re Nicholes,* 184 B.R. 82, 88 (9th Cir. BAP 1995). However, case law has provided some definition for us. It is generally settled that "if all events giving rise to liability occurred prior to the filing of the bankruptcy petition", the claim is not contingent. *Id.; In re Fostvedt,* 823 F.2d 305, 306 (9th Cir.1987); *In re Dill,* 30 B.R. 546, 549 (9th Cir. BAP 1983), *aff'd,* 731 F.2d 629 (9th Cir.1984); *In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991); *U.S. v. Verdunn,* 89 F.3d 799, 801 at n. 7 (11th Cir.1996).
That proposition is true even if liability has not yet been fixed. That point was recently reiterated in *In re Nicholes,* 184 B.R. 82, 89 at n. 7 (9th Cir. BAP 1995). There, the court wrote:
A tort claim ordinarily is not contingent as to liability; the events that gave rise to liability to the tort claim usually have occurred and liability is not dependent on some future event that may never happen. It is immaterial that the tort claim is not adjudicated or liquidated, or that the claim is disputed, or indeed that it has any of the many other characteristics of claims under the Code. (Citation omitted.)

Accord, *In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991); *In re Dill,* 30 B.R. 546, 549 (9th Cir. BAP 1983), *aff'd* 731 F.2d 629 (9th Cir.1984).

In the present case, all of the events upon which ARSI's liability was imposed occurred prepetition. Therefore, the claim is not contingent and is not susceptible to estimation on that ground.

An alternate ground for estimation of a claim under § 502(c) is that the claim is unliquidated. The term liquidated has also acquired a working definition through case law. In *In re Fostvedt,* 823 F.2d 305 (9th Cir.1987), the debtor was jointly and severally liable with three other persons on two promissory notes. He argued that the claim was unliquidated because how much of the total debt he would have to pay depended on how much his co-obligors paid. The court disagreed. In addressing the debtor's argument, the court stated:
First, we agree with the Bankruptcy Appellate Panel of this court that the question whether a debt is liquidated turns on whether it is subject to "ready determination and precision in computation of the amount due." (Citation omitted.)
823 F.2d at 307. Some courts have made the shorthand statement:
Thus, debts arising from a contract are generally liquidated. (Citation omitted.) On the other hand, debts based on unlitigated tort and quantum meruit claims are generally unliquidated because damages are not based on a fixed sum. (Citations omitted.)
*In re Nicholes,* 184 B.R. 82, 89 (9th Cir. BAP 1995).

A more extensive consideration of the question was made in *In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991). There, the court wrote:
The question now turns to the issue of liquidation. In *In re Sylvester,* 19 B.R. 671, 673 (9th Cir. BAP 1982) the court made the observation in *dicta* that "contract debts (even though disputed) are considered liquidated and tort claims are not." That statement is generally correct, but

must be taken in its proper context. As the *Sylvester* court more specifically explained:

> The concept of liquidation has been variously expressed. The common thread ... has been ready determination and precision in computation of the amount due. ... Some cases have stated the test as to whether the amount due is capable of ascertainment by reference to an agreement or by simple computation. *Id.*

Therefore, whether a debt is liquidated or not ... does not depend strictly on whether the claim sounds in tort or in contract, but whether it is capable of ready computation.

■ In the present case, the money component of the judgment was calculated in large part from the value of shares that the trial court found should have been transferred to, or held in trust for Ms. Casey. Even if the case had not proceeded to trial and judgment, the type of damages claimed were susceptible to ready determination. But the case did proceed to judgment, and as of the date of the filing of the bankruptcy was readily calculable. The claim is therefore liquidated.

■ The remaining question regarding the liquidated status of the claim is whether the debtor, by scheduling the claim as disputed, or by filing a claim objection, can make an otherwise liquidated claim unliquidated for purposes of § 502(c). The courts which have considered the question have concluded that a readily calculable claim remains liquidated regardless of whether it is disputed. In *In re Loya*, 123 B.R. 338, 340–41 (9th Cir. BAP 1991), the court wrote:

> For the same reason, whether a debt is liquidated does not depend on whether it is disputed. Thus, a disputed debt which is capable of ready determination is liquidated.

The Bankruptcy Appellate Panel reached the same conclusion in *In re Nicholes*, 184 B.R. 82, 91 (1995). The court wrote:

> Construing *Sylvester* with [*In re*] *Wenberg* [94 B.R. 631 (9th Cir. BAP 1988) ] and *Loya*, we hold that the fact that a claim is disputed does not per se exclude the claim from the eligibility calculation under § 109(e), since a disputed claim is not necessarily unliquidated. So long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated ..., regardless of any dispute.

Accord, *U.S. v. Verdunn*, 89 F.3d 799, 802 at n. 9 (11th Cir.1996).

■ Section 502(c) contemplates that a bankruptcy court will estimate a claim that is either contingent or unliquidated if failure to do so would unduly delay administration of the bankruptcy case. Estimation, in turn, contemplates that the bankruptcy court will, in effect, put itself in the place of a nonbankruptcy court or jury to estimate whether a debtor is liable to the claimant and, if so, to estimate the amount of the debt. In either instance, § 502(c) presupposes that a nonbankruptcy court has not already done so. It would stand comity on its head and misuse the limited scope of § 502(c) for a bankruptcy court to proceed as if a nonbankruptcy court or jury had not acted at all when a case has already proceeded to judgment. Yet that is what the debtor asks this Court to do.

Because the Family Court claim proceeded to judgment in state court, the claim is neither contingent nor unliquidated for purposes of 11 U.S.C. § 502(c). That is so despite the fact that the judgment has been appealed, and despite the peculiarity of California law that keeps a judgment non-final for issue preclusion purposes so long as an appeal is pending. However, the Court notes that the result would be the same even if § 502(c) were applicable to this case. The judgment was reached by the state court after a full trial. This Court would not conduct a full retrial as an estimation procedure, and absent a retrial this Court could not make a more accurate estimate of the claim already determined by the state court after a full trial. Accordingly, if § 502(c) were applicable to this case and the Court was obliged to estimate the Family Court claim, the Court would estimate it in the amount of the state court judgment.

■ There is another, compelling reason why resort to claims estimation under § 502(c) is improper after a judgment has been rendered by a non-bankruptcy trial court. Debtor attacks the state court judgment as being in excess of the Family Court's jurisdiction, as well as being in error in other ways. To estimate the claim as debtor would have this Court do, the Court would have to assess the debtor's attack on the Family Court's jurisdiction, as well as the other specifications of error. But those issues are the subject of the appeal. The Ninth Circuit briefly addressed a similar situation in *In re Corey,* 892 F.2d 829 (1989). There, the court wrote:

> We also reject appellants' attempts to challenge the Louis's claims against the Corey estate. The Louis's claims arise from the Hawaii court's decision.... Appellants raise a number of objections to the state court's decision based on the Constitution and state and federal law. Appellants' claims thus represent a collateral attack upon the judgment of a state court. This attack is beyond the jurisdiction of federal courts to consider, even though it purports to raise constitutional issues. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 [103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206] ...; *Worldwide Church of God v. McNair,* 805 F.2d 888, 890–91 (9th Cir.1986).

892 F.2d at 834.

The proposition recognized by the Ninth Circuit in *In re Corey,* that a federal court may not entertain a collateral attack on a state court judgment (except by habeas corpus), has its underpinnings in a 1923 decision by the United States Supreme Court. In *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362, the Supreme Court had before it on direct appeal an order of the United States District Court which held it did not have jurisdiction to declare void a state court judgment. The grounds for challenging the judgment included arguments that the judgment violated the Contract Clause of the Constitution, as well as the due process and equal protection guarantees of the Fourteenth Amendment.

In *Rooker,* the Supreme Court concluded that the district court lacked jurisdiction to hear the collateral attack on the state court judgment. The Court wrote:

> It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject-matter and the parties, that a full hearing was had therein, that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the state on an appeal by the plaintiffs. [191 Ind. 141] 131 N.E. 769. If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. (Citations omitted.) Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. (Citation omitted.)

263 U.S. at 415–416, 44 S.Ct. at 150. The Supreme Court then made its central point:

> To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original.

263 U.S. at 416, 44 S.Ct. at 150.

Sixty years later, the Supreme Court announced its decision in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). That case involved decisions by the District of Columbia courts and the issue of federal district and circuit court jurisdiction over such decisions. The underlying case involved the District of Columbia court rules for admission of attorneys. After unsuccessful application, both applicants brought actions in the federal district court challenging the decisions of the District of Columbia courts. Both actions were dismissed. Citing *Rooker,* the Supreme Court wrote:

The District of Columbia Circuit properly acknowledged that the United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings.

460 U.S. at 476, 103 S.Ct. at 1311–12. Because of the foregoing two decisions, the proposition that a federal district court lacks jurisdiction to hear and decide a collateral attack on a state court judgment has become known as the *Rooker–Feldman* doctrine.

The Second Circuit Court of Appeals reviewed applicability of *Rooker–Feldman* in the infamous litigation involving Texaco and Pennzoil which had resulted in a huge judgment entered by the Texas state court. The appellate court reviewed the evolution of the doctrine, and cited to *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296, 90 S.Ct. 1739, 1747–48, 26 L.Ed.2d 234 (1970) as reaffirming *Rooker.* The Second Circuit quoted:

> "Again, lower federal courts possess no power whatever to sit in direct review of state court decisions. If [the party seeking the injunction] was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the [state] appellate courts and ultimately, if necessary, in this Court."

*Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (2nd Cir.1986). The Second Circuit then wrote:

> The rationale behind the *Rooker–Feldman* principle is clear and sound. In this nation we have two "essentially separate legal systems." (Citation omitted.) "[T]his dual system could not function if state and federal courts were free to fight each other for control of a particular case. Thus, in order to make the dual system work and 'to prevent needless friction between state and federal courts,' (citation omitted), it was necessary to work out lines of demarcation between the two systems."

*Id.*

Texaco argued that *Rooker–Feldman* should not apply in cases where there was no appellate finality to the judgment because an appeal was pending. The Second Circuit responded:

> We disagree and know of no decision so holding. Indeed, courts, including the Supreme Court, have not hesitated to apply the *Rooker–Feldman* doctrine to judgments which Texaco would label as "non-final".

*Id.* The court explained:

> Although the state judgments in *Rooker* and *Feldman* had survived appeal in the state court system, that fact was not advanced by the Supreme Court as a basis for, or as a condition to, its decision. Rather the doctrine stems from recognition that (1) state courts are just as obligated and competent as federal courts to decide federal constitutional questions, (citations omitted), (2) a path is available through the state appellate system to the Supreme Court, and that (3) waste of judicial resources and unnecessary friction between state and federal courts might ensue if a federal district court intervened to overrule a state court decision. (Citation omitted.) Allowing lower federal courts to review the judgments of state lower courts is as intrusive and as likely to breed antagonism, between state and federal systems as allowing federal court review of the judgments of the states' highest courts. Indeed, if *Rooker–Feldman* only barred federal review of judgments which had been fully appealed through the state system, *it would foster federal/state rivalry by creating incentives for disappointed state court appellants to forum-shop, jumping over to federal courts instead of appealing their cases to the states' highest tribunals.* (Emphasis added.)

784 F.2d at 1142–1143. The Second Circuit then concluded:

> [T]he *Rooker–Feldman* doctrine was clearly violated by much of the district court's decision. Many of the judge's conclusions with respect to the merits of the Texas action, despite his lip-service disclaimer, constitute what amounts to an impermissible appellate review of issues that have

already been adjudicated by the Texas trial court.

784 F.2d at 1143.

The Ninth Circuit Court of Appeals has applied *Rooker–Feldman* to the same effect. *Worldwide Church of God v. McNair*, 805 F.2d 888 (1986). The Ninth Circuit also agrees that the doctrine applies "even though state court appeals are not final." 805 F.2d at 893, n. 3. As did the Second Circuit in *Texaco*, the Ninth Circuit recognized there may be issues raised for the first time in federal court which may permit federal court jurisdiction. The test appears to be whether review of the issue requires not only review of a challenged state court rule, but also application of that rule by the state court. If the relief sought requires consideration of application of the challenged rule, then the federal claim is considered to be "inextricably intertwined" with the state court decision, and federal jurisdiction fails. *Worldwide Church of God*, 805 F.2d at 892. Quoting from its earlier decision in *Robinson v. Ariyoshi*, 753 F.2d 1468 (1985), the Ninth Circuit explained:

> Faced with the task of deciding our power to review constitutional issues which arise from a state court proceeding, we view the res judicata requirement of full and fair opportunity to litigate, and the *Feldman* "inextricably intertwined" barrier as two sides of the same coin. Under the rubric of either "jurisdiction" or "res judicata," the crux of the question is whether there has already been actual consideration of and a decision on the issue presented. If consideration and decision have been accomplished, action in federal court is an impermissible appeal from the state court decision.

753 F.2d at 1472. Where the subject at issue is the state court's own jurisdiction to hear a particular matter against a particular party, and the opportunity for direct appeal exists in the state courts, there is even less reason to support a claim of federal jurisdiction than a claim that the state court action violated the United States Constitution.

ARSI has argued, as already noted, that under California law the principles of res judicata do not apply to the Family Court

judgment if the judgment is not final because an appeal is pending. But that recognition of the peculiarity of California law does not vitiate the applicability of *Rooker–Feldman* to a judgment pending an appeal. *Texaco* and *Worldwide Church of God* make that clear, as does *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986). There, the court wrote:

> Insofar as these complaints about the state court or that court's decree are legally cognizable and do not represent mere grumbling, they are properly addressed to the state appellate courts, not to us. We hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to revision in the state appellate system.

■ In some instances, parties who lost in state court have filed original proceedings in federal court claiming a violation of civil rights under federal statutes, such as 42 U.S.C. § 1983. In those cases, the courts have looked behind the civil rights action to ascertain what was really at issue. Upon finding that complaints about an adverse state court judgment were at the core of the proceeding, the courts have held that the independent statutory cause of action under § 1983 cannot be used to collaterally attack a state court judgment because of *Rooker–Feldman*. *Branson v. Nott*, 62 F.3d 287, 291–92 (9th Cir.1995); *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir.1993); *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir.1986). The same principle applies in the bankruptcy arena. Independent statutory mechanisms, such as claims estimation or objection and adjudication cannot be used to collaterally attack a prior state court judgment when resolution of the claims estimation or objection necessarily involves review of the state court judgment, as it does in the present case.

The foregoing proposition was squarely before the Bankruptcy Court in *In re Highway Truck Drivers and Helpers, Local 107*, 100 B.R. 209 (Bankr.E.D.Pa.1989). The court phrased the issue:

> The question thus becomes whether a bankruptcy court, under the guise of proof

of claim litigation, is the appropriate forum for the assertion of this due process right. 100 B.R. at 216. Citing to *Rooker–Feldman*, the court concluded it lacked jurisdiction to entertain the challenge notwithstanding the unique and equitable responsibility of bankruptcy courts.

In the present case, ARSI has argued that the Supreme Court's decision in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) would allow this Court to review the Family Court judgment notwithstanding all the foregoing. However, as noted in *In re Highway Truck Drivers*, the later decision in *Heiser v. Woodruff*, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946), circumscribed the scope of *Pepper v. Litton*. That circumscription was characterized by one court as:

> the bankruptcy court's equitable power to disregard the principle of res judicata may be exercised only where the prior decisions did not address the later allegations of fraud or collusion.

*In re Highway Truck Drivers and Helpers, Local 107*, 100 B.R. 209, 217 (E.D.Pa.1989).

The *Rooker–Feldman* doctrine has been applied in other bankruptcy cases, one of which is *In re Morrow*, 189 B.R. 793 (Bankr. C.D.Cal.1995). *Morrow* presents a thorough and useful analysis of *Rooker–Feldman*. The most recent opinion to discuss the doctrine in the bankruptcy context is *In re Goetzman*, 91 F.3d 1173 (8th Cir.1996). In that case, the debtors had completed a Chapter 12 case and received a discharge of all dischargeable debts. Part of the case had involved the restructuring of the mortgage debt. After discharge, a dispute arose over the amount of the restructured debt, and both sides filed state court actions. Trial was held and the creditor prevailed. Appeal in the state courts was unsuccessful. While the appeal was pending, the debtors filed an adversary proceeding in bankruptcy court, asking the bankruptcy court to determine what portion of the creditor's claim had been discharged in bankruptcy, and the value of the remaining lien. The bankruptcy court found it had jurisdiction, but that the complaint should be dismissed for failure to state a claim because the state court had already determined the answer. The district court reversed in part, holding that the bankruptcy court lacked subject matter jurisdiction because "regardless of how the adversary complaint was postured, what the Goetzmans actually sought was federal review of state court determinations." 91 F.3d at 1176. In so holding, the district court relied on *Rooker–Feldman*.

The Eighth Circuit undertook a review of the *Rooker–Feldman* doctrine. It wrote:

> Initially it should be noted that preclusion (relied on by the bankruptcy court) and the *Rooker–Feldman* doctrine (relied upon by the district court) are closely related legal concepts. *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n. 1 (8th Cir.1995) (noting that "*Rooker–Feldman* is broader than claim and issue preclusion because it does not depend on a final judgment on the merits. Aside from this distinction the doctrines are extremely similar."); *Bryant v. Sylvester*, 57 F.3d 308, 312 (3rd Cir.1995) (discussing rational [sic] behind the *Rooker–Feldman* doctrine, noting that "[l]ike claim preclusion, *Rooker–Feldman* is partly concerned with finality, with ensuring that litigants do not take multiple bites from the same apple.") . . . .

91 F.3d at 1177. In discussing the concept of "inextricably intertwined", the *Goetzman* court wrote:

> Although the state and federal claims may not be identical, impermissible appellate review may occur when a federal court is asked to entertain a claim that is "inextricably intertwined" with the state court judgment. *Id.*

> [T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id.* Elaborating on the reach of *Rooker–Feldman*, the court stated:

Although we believe that the issue of bankruptcy discharge was in fact raised to a limited extent in the state court proceedings, we note that the *Rooker–Feldman* doctrine, like the doctrine of preclusion, applies to claims which were not brought before the state court but could have been raised in the state court action. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. at 1316 n. 16.

91 F.3d at 1178, n. 6. The appellate court then applied the doctrine to the facts before it. The court stated:

An examination of the Goetzmans' respective claims leads to the conclusion that the federal claims are inextricably intertwined with the state court decision. The heart of the state court proceedings was a determination of the amount the Goetzmans owed to Agribank. The Goetzmans themselves brought the declaratory judgment action to determine the amount owed under the mortgage. Although the Goetzmans' adversary complaint and arguments below cast the issue as whether a portion of their debt to Agribank was discharged in bankruptcy, it is apparent that what was really sought was a federal judgment that would change the state court result. This attempted relief is exactly what is barred by the *Rooker–Feldman* doctrine.

91 F.3d at 1177. In rejecting the appellants' last argument, the appellate court concluded:

The Goetzmans argue that the *Rooker–Feldman* doctrine should not be employed to bar their current action because they contend they were not given a fair opportunity to be heard on the merits and that they have a procedural due process right to the same. We disagree. Application of the *Rooker–Feldman* doctrine does not depend on a final judgment on the merits of an issue, *Charchenko,* 47 F.3d at 983 n. 1, nor is there a procedural due process exception to the doctrine. · *Postma,* 74 F.3d at 162 n. 3. If the state trial court erred in the extent it addressed the issue the Goetzmans are now pressing, relief was available in the appellate courts of Minnesota. None being forthcoming, the Goetzmans cannot now bring an action in federal

court which would effectively reverse the state court decision or void its ruling.

91 F.3d at 1178.

The foregoing is a lengthy exposition on the *Rooker–Feldman* doctrine, but the importance of its application in bankruptcy cases is significant and warrants full explication.

For all the reasons set out above, the Court concludes that ARSI's motion to estimate the Family Court judgment is denied because it is neither contingent nor unliquidated. Estimation under § 502(c) would also be improper under the *Rooker–Feldman* doctrine. Finally, even if the Court were to estimate the claims based upon the Family Court judgment, the claims would be estimated in the amount of the judgment. For the same reasons, the motion to disallow the claims based on the Family Court judgment is denied.

## II. AUDRE, INC.

▮ Although the ARSI and Audre, Inc. cases have been consolidated for administrative purposes, the cases have not been substantively consolidated. Audre, Inc. has brought its own motion to disallow the claims filed against it which are based on the Family Court judgment. Alternatively, Audre, Inc. seeks to have those claims estimated at zero.

Audre, Inc. was not a party to the Family Court litigation, nor has the Family Court judgment been entered as to it. Audre, Inc. is the wholly-owned subsidiary of ARSI, against whom the judgment was entered. The present record reflects that Audre, Inc. is a corporation in its own right, independent in its identity from ARSI, although owned by the latter. Consequently, as to Audre, Inc. the claims based on the Family Court judgment are at best contingent and unliquidated. In reality, however, the claimants have offered no persuasive basis for asserting that Audre, Inc. has any liability to them for any of the conduct which formed the basis of the Family Court judgment. Claimants have argued that Audre, Inc. was somehow the alter ego of ARSI, but they still have made no showing to support that bald assertion. Their claims are against ARSI, ARSI is the

corporate entity they brought into the Family Court action, and it is ARSI's conduct on which its liability was determined. Accordingly, the Court treats the motion to disallow as a claim objection and finds that the claimants have failed to meet their burden of proof that Audre, Inc. has any liability to them for the claims which are based on the Family Court judgment. Therefore, those claims filed against Audre, Inc. which are based on the Family Court judgment are disallowed.

## CONCLUSION

For the reasons set out, the motions to disallow or estimate the claims based on the Family Court judgment as against ARSI are denied. The motion to disallow the same claims as against Audre, Inc. is granted, and the Court need not reach the alternative motion to estimate the latter.

IT IS SO ORDERED.