NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

---

**BAP NOS. PR 23-033 and PR 24-002**

---

**Bankruptcy Case No. 21-02605-MCF**

---

**DAVID TORRES REYES,**
**Debtor.**

---

**CAROLINE ORTEGA BERRIOS, individually and as a member**
**of the Estate of Edwin Avila Vargas and member of the**
**Legal Partnership composed with him;**
**EDWIN JEROME AVILA ORTEGA, individually and as a member**
**of the Estate of Edwin Avila Vargas; and**
**FABIOLA NICOLA AVILA ORTEGA, individually and as a member**
**of the Estate of Edwin Avila Vargas,**
**Appellants,**

**v.**

**DAVID TORRES REYES and**
**OSMARIE NAVARRO MARTINEZ, Chapter 13 Trustee,**
**Appellees.**

---

**Appeals from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Mildred Cabán Flores, U.S. Bankruptcy Judge)**

---

**Before**
**Fagone, Panos, and Katz, U.S. Bankruptcy Appellate Panel Judges.**

---

**Wallace Vázquez Sanabria, Esq., on briefs for Appellants.**
**Rosano Moreno Rodriguez, Esq., on briefs for Appellee, David Torres Reyes.**
**No briefs filed by Appellee, Osmarie Navarro Martinez, Chapter 13 Trustee.**

---

**December 17, 2024**

---

**Katz, U.S. Bankruptcy Appellate Panel Judge.**

The above-named appellants (the "Appellants") have filed two appeals in the chapter 13 debtor's bankruptcy case.[1] In the first appeal, the Appellants challenge the bankruptcy court's order denying their request for relief from the automatic stay to continue a tort action against the debtor in the Puerto Rico courts. See BAP No. PR 23-033. For the reasons discussed below, we **VACATE** the order denying stay relief and **REMAND** to the bankruptcy court for further proceedings consistent with this opinion.

In the second appeal, the Appellants challenge the order confirming the debtor's chapter 13 plan of reorganization. See BAP No. PR 24-002. Finding no error, we **AFFIRM** the confirmation order.

## BACKGROUND

### I. Relevant Proceedings in the Bankruptcy Case

David Torres Reyes (the "Debtor") filed a chapter 13 bankruptcy petition in August 2021. On his bankruptcy schedules, the Debtor listed Caroline Ortega Berrios as an unsecured creditor with a contingent, unliquidated, and disputed claim in the amount of $4,204,969 arising from a "tort action," and listed the "Heirs of Edwin Avila Vargas" as unsecured creditors with a $1.00 contingent, unliquidated, and disputed claim.[2]

---

[1] Although these appeals were not administratively joined for briefing purposes, they were companioned for argument and now for disposition.

[2] Appellant Caroline Ortega Berrios is the spouse of Edwin Avila Vargas, who is deceased, and the other two appellants are Mr. Avila's children.

### A. Appellants' Proof of Claim and Debtor's Objection

The Appellants initially filed an unsecured proof of claim in the amount of $3,700,763.[3] The Debtor objected to the Appellants' claim. In the objection, the Debtor explained that the claim was based on a judgment entered by the Puerto Rico Court of First Instance ("local court") in a lawsuit filed against the Debtor and others (including the Debtor's employer, its insurance company, and the Debtor's personal insurance company) relating to an automobile accident involving the Debtor and Edwin Avila Vargas which resulted in Mr. Avila's death. However, the judgment was reversed on appeal and the matter was remanded to the local court to "reevaluate" the comparable negligence between the Debtor and Mr. Avila and to determine the corresponding damages. Consequently, the Debtor argued, there was no final judgment and the Appellants' claim was disputed and unliquidated.

Thereafter, the Appellants amended their proof of claim to assert an unliquidated claim in an unknown amount. They also filed a motion requesting an estimation hearing under § 502(c) (the "Motion for Estimation Hearing").

### B. Stay Relief Motion

After the Appellants amended their claim to assert an unliquidated claim in an unknown amount, and after they filed the Motion for Estimation Hearing, the Appellants filed a motion seeking relief from the automatic stay under § 362(d)(1) to continue the Puerto Rico litigation (the "Stay Relief Motion"). The Debtor objected. The Debtor emphasized that in reversing the

---

[3] The Appellants also moved to dismiss the chapter 13 petition, asserting the Debtor was ineligible for chapter 13 as his unsecured debts—including the $3,700,763 judgment debt—exceeded the statutory limit in § 109(e) (providing, at that time, that a chapter 13 debtor's "noncontingent, liquidated, unsecured debts" must be less than $419,275). The Debtor objected, asserting that the Appellants' unliquidated claim should not be included in the calculation of debts under § 109(e). The Appellants later withdrew their motion to dismiss after amending their proof of claim to reflect that their claim was unliquidated.

Puerto Rico judgment, the appellate court ruled that his employer and its insurance company, Triple S Propiedad ("Triple S"), were not liable for covering the claim against him. The other insurance company involved in the case—his personal insurance company—had been liquidated and funds in the coverage amount of $100,000 had been deposited in the local court. As he was in bankruptcy and there were no insurance companies from which the Appellants could obtain payment, the Debtor argued, continuing the Puerto Rico litigation would serve no purpose and there was no cause to lift the automatic stay. The Debtor also asserted:

> [Debtor]'s case has a liquidation value of $4751 and present value of $5511. . . . [T]here is a general unsecured pool recognized of $14,256. Movant[s] may file an estimated claim so that they could enjoy distribution under the Chapter 13 case and could request the First Instance State Court to release funds consigned with [Debtor]'s approval.

For these reasons, the Debtor argued, the Stay Relief Motion should be denied.

### C.  Supplemental Briefs

After an initial hearing on the Stay Relief Motion, the bankruptcy court ordered the parties to file supplemental briefs addressing the "12-factor test" used by courts in the First Circuit for determining whether to grant relief from stay to continue litigation in another forum.

In their supplemental brief, the Appellants argued there was cause to lift the stay when considering the factors set forth in In re Rivera Guzmán, 513 B.R. 202, 208-09 (Bankr. D.P.R. 2014).[4] They explained that the Debtor had two insurance policies: one with Real Legacy

---

[4] In In re Rivera Guzmán, the bankruptcy court identified various factors courts should consider when determining if there is cause to lift the automatic stay to continue litigation in another forum:

(1) whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties; (7) whether

4

Insurance ("Real Legacy") "directly covering his responsibility as a driver" and one with Triple S covering his employer "and himself as an additional insured while driving a covered auto." They asserted that the "dollar amount" of the Debtor's liability must be determined as the Debtor would then be entitled to assert a claim against Triple S for payment of those damages under the $30 million insurance policy. The Appellants further maintained that the liquidators of Real Legacy were potentially liable for more than the $100,000 held by the local court due to their "failure to deposit the amounts due under the terms of the insurance [policy] on a timely basis." These were issues which should be resolved in the local court, the Appellants asserted.

When addressing the specific factors set forth in Rivera Guzmán, the Appellants stressed that: (1) the local court was "in a better position" to determine damages due to its familiarity with the case; (2) all creditors would benefit from a final resolution in the Puerto Rico litigation "as an insurance company[] will cover damages by Debtor if he is negligent"; (3) resolution of the Puerto Rico litigation would serve the interests of judicial economy because the Appellants' claim would no longer need to be estimated in the bankruptcy case; and (4) the Appellants were "suffering more than Debtor on account of the automatic stay" because they had "lost a husband or father" and the stay precluded them from recovering from the liable parties.

The Debtor countered that the Rivera Guzmán factors weighed against granting stay relief, emphasizing: (1) there were no insurance companies from which the Appellants could

_____

litigation in another forum would prejudice the interest of other creditors and/or other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination under section 510(c); (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor; (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; (12) the impact of the stay on the parties[;] and (13) the balance of hurt.

513 B.R. at 208-09 (citation omitted).

recover if the Debtor were determined to be liable; (2) because of this, the chapter 13 plan would still have the same liquidation value and general unsecured pool regardless of the outcome in the Puerto Rico litigation; (3) the Debtor had already agreed that the $100,000 held by the local court should be turned over to the Appellants; (4) accordingly, the Appellants' recovery would be the same regardless of whether the Puerto Rico litigation was concluded; and (5) allowing the Puerto Rico litigation to continue would only drain the Debtor's financial resources with no clear benefit to the estate, which would negatively impact the feasibility of his chapter 13 plan and the amounts available for distribution to creditors.

**D.      Amended Plan of Reorganization and Appellants' Objection to Confirmation**

Meanwhile, the Debtor filed an amended plan of reorganization (the "Plan") on May 9, 2023, in which he proposed to pay the trustee $21,000 over 60 months providing a pro rata distribution of $14,256 to the five holders of allowed unsecured claims.  After the Debtor filed a Motion Requesting Entry of Order Confirming Plan indicating that the chapter 13 trustee had filed a favorable report on confirmation and no objections had been filed, the Appellants filed an objection to confirmation ("Objection to Confirmation").  The Appellants did not oppose the terms of the proposed Plan, but instead argued that confirmation was "premature" due to the pending Motion for Estimation Hearing and Stay Relief Motion.

**II.      Order Denying Stay Relief**

**A.      Hearing on Stay Relief Motion**

The bankruptcy court conducted a final hearing on the Stay Relief Motion on October 17, 2023.  At the hearing, the parties essentially reiterated the arguments they presented in their written submissions.  The Appellants continued to assert that there were issues pending before the local court regarding "the extent of comparable negligence" between the Debtor and Mr.

6

Avila, as well as Triple S's potential liability. The Appellants conceded that the "direct cause of action" against Triple S had been dismissed but argued that the Debtor had a "subsidiary action" against Triple S to cover any damages for which the Debtor was deemed liable. In addition, the Appellants argued, the liquidators of Real Legacy were liable for more than the $100,000 deposited in the local court. The Appellants asserted that although they had requested an estimation hearing on their claim in the bankruptcy case, the local court was better positioned to determine the extent of the Debtor's liability and the damages owed.

The Debtor countered that the two insurance companies involved in the case were no longer parties to the Puerto Rico litigation and that the Appellants had been misleading the court by arguing that Triple S was still a defendant in that action. Arguing that the Guzmán Rivera factors weighed against granting stay relief, the Debtor stressed:

> [T]he Debtor . . . will be much more impacted by this with no real purpose because movant will end up in the same exact place, obtaining consigned f[und]s from the insurance company that was liquidated and obtaining recovery from [D]ebtor's bankruptcy, which has already established a liquidation value and a general unsecured pool.

When the Appellants again advanced that there would be a "subsidiary cause of action" against Triple S if the Debtor were determined to be liable, the court stressed that it did not have copies of the insurance policies or any other documents supporting the Appellants' position that they could recover under either policy. The court further stated that it seemed that determining (or estimating) the amount of the Debtor's liability was unnecessary in the bankruptcy case:

> I could . . . modify[ ] the stay so that the movants could go collect [the $100,000 held by the local court], and then they could file a deficiency claim. I don't understand why the bankruptcy court has to do an estimation of the claim. If it's [$]3.5 or 3.9 million, you subtract [$100,000], . . . and there's a deficiency balance.

> And this is a [$21,000] plan. So you subtract whatever amounts from that, such as attorney's fees and other expenses, and it's just a percentage. And this creditor

would be the largest creditor, and . . . they would take almost the entire part in the plan to be paid.

Of course, it's not enough. I mean, we lost two lives. I am sympathetic to that. I understand that. That's very difficult. But based on this record, it is very difficult for the Court to consider modifying or granting [relief from] the stay.
. . . .
. . . In a sense, in bankruptcy, it doesn't really matter the amount [of Debtor's liability] because . . . the base of the [Debtor's] plan is only [$21,000].
. . . .
. . . [The Appellants are] making these arguments that conceivably [they] could claim against Triple S [or they] could claim another [$200,000] from this insurance company that is now defunct. I don't have any documentation for that. . . .
. . . .
. . . So I just don't see. The debtor can't afford to pay for the litigation costs. . . . [W]hat little money is left in the plan is going to be exhausted in litigation and trying to defend [himself].

In response, the Appellants argued that the amount of the Debtor's liability could have an impact on the bankruptcy court's jurisdiction over the bankruptcy case, because it could cause the Debtor's total unsecured debts to exceed the statutory limit in § 109(e) for chapter 13 eligibility. The court rejected this argument, emphasizing that chapter 13 eligibility is determined on the petition date and that estimating the debt during the pendency of the bankruptcy case would not make the debt noncontingent or liquidated on the petition date.

Ultimately, the bankruptcy court, citing § 362(d)(1), ruled as follows:

One who seeks relief from the automatic stay must, in the first instance, establish a legally sufficient basis, cause for such relief. The burden [then] lies with the . . . debtor to demonstrate that it is entitled to the stay. In re[] Curtis, 40 B.R. 795 [Bankr. D. Utah 1984].

The movant[s'] motion for relief [from] stay or modification of the stay is denied for two reasons. First, [their] failure to submit supporting documentation in English in support of [their] factual and legal theories, pursuant to Local Bankruptcy Rule 4001, and failure to meet the twelve-factor test[]. The United States District Court for the District of Puerto Rico in [Goya Foods, Inc. v. Unanue-Casal (In re Unanue-Casal)], 15[9] B.R. 90 [(D.P.R. 1993)], making reference to In re[] Curtis, enumerates twelve factors courts could consider in determining if a stay should be lifted or continued.

8

. . . [I]n the present case, factors such as one, interference in the bankruptcy case; two, c[ost] to the bankruptcy estate to continue the litigation at state court; . . . [three], that no insurer would cover the litigation—well, according to the debtor, which is disputed by the movant; four, the prejudice that the litigation [in] state court will have [o]n the interests of other creditors, taking into consideration that the resources used for the litigation are resources that would not be able to fund the plan; and five, the balance of hurt[,] weighs against the modification of the stay in favor of the movant to continue the proceedings in state court up until a final, firm, and unappealable judgment.

In relation to the balance of hurt, this Court has considered movant's argument in relation to their desire to continue state court litigation to collect from Triple S. However, movants have not met their burden to establish that collection from Triple S is even a possibility in state court. Movants have not provided this Court with any evidence . . . such [as a] copy of an insurance policy with Triple S to make such a determination or the policy that the state insurance fund would pay an additional [$200,000] on top of the [$100,000] already deposited in state court.

At this moment, the Court concludes that the stay should be denied [when] weigh[ing] the applicable factors that the Court can consider as establish[ed] in the Goya Food[s] v. Unanue-Casal case. So the motion for relief [from] stay filed by the movant is denied.

After the hearing, the bankruptcy court entered an order denying the Stay Relief Motion for the reasons stated on the record at the hearing (the "Order Denying Stay Relief").

B.    **Order Denying Reconsideration**

The Appellants moved for reconsideration, arguing that the Triple S insurance policy—a copy of which they had submitted to the bankruptcy court that same day—established that the Debtor would have a "subsidiary cause of action" against Triple S once he was legally obligated to pay damages. The Debtor opposed reconsideration, arguing that the Appellants were simply rehashing prior arguments which the bankruptcy court already rejected. On December 6, 2023, the bankruptcy court denied the request for reconsideration without elaboration.

The Appellants appealed the Order Denying Stay Relief and the order denying reconsideration.

9

**III.    Order Confirming Plan**

Thereafter, on February 1, 2024, the bankruptcy court, without a hearing, entered an order confirming the Debtor's Plan (the "Confirmation Order").  The order provided, among other things, that "[o]bjections . . . ha[d] been resolved" and that "each of the requirements for confirmation of a Chapter 13 plan pursuant to . . . § 1325(a) [we]re met."

The Appellants moved for reconsideration, arguing they had been denied due process because the court confirmed the Plan without addressing their pending Objection to Confirmation and Motion for Estimation Hearing.  The Debtor opposed reconsideration, arguing that the Plan complied with all requirements for confirmation and would be the same regardless of the outcome of the Stay Relief Motion or an estimation hearing.  The bankruptcy court denied the motion for reconsideration without elaboration.

The Appellants' appeal of the Confirmation Order and the order denying reconsideration followed.

## POSITIONS OF THE PARTIES ON APPEAL

**I.    The Appellants**

The Appellants argue that the court abused its discretion in denying the Stay Relief Motion because the factors set forth in In re Guzmán weighed in favor of granting such relief. They contend there are many issues which need to be resolved by the local court, including "the amount of dollar liability against debtor," since the Debtor would then be entitled to seek coverage from Triple S under the $30 million policy.  It would be "unfair to discharge debtor of responsibility to movants without establishing first whether Triple S . . . is liable to him for any judgment issued" against the Debtor, the Appellants argue.  The Appellants further emphasize that they are not trying to collect from the Debtor personally, but rather from Triple S.  "Liability

is limited to the policy amount, the Debtor incurs no personal liability, and the judgment will be satisfied from the policy proceeds which are not available to the Debtor (insured) for any purpose other than paying the accident claim," they contend.

Regarding the Confirmation Order, the Appellants, citing § 1324 and § 502(c)(1), argue that the bankruptcy court erred when it confirmed the Plan without addressing their Objection to Confirmation and without holding an estimation hearing. Without any further discussion of these statutory provisions, the Appellants argue that "it is evident that the Bankruptcy Court abused its discretion in not scheduling an estimation hearing . . . and in confirming a plan which had objections both by the Trustee and appearing party."

## II. The Debtor

The Debtor counters that the bankruptcy court did not abuse its discretion in denying the Stay Relief Motion, emphasizing that the Appellants had not met their burden of establishing that collection from Triple S or the liquidators of Real Legacy was possible. The Debtor also asserts that the Guzmán Rivera factors weighed against granting stay relief, stressing that because there are no insurance companies from which the Appellants could recover if the Debtor were determined to be liable, the chapter 13 plan would still have the same liquidation value and general unsecured pool regardless of the outcome in the Puerto Rico litigation. And, as he had already agreed that the $100,000 held by the local court on account of the Real Legacy policy should be turned over to the Appellants, the Debtor argued, the Appellants' recovery would be the same regardless of the outcome of the Puerto Rico litigation. Therefore, he contends, allowing the Puerto Rico litigation to continue would only exhaust the Debtor's financial resources, which would negatively impact the feasibility of his chapter 13 plan and the amounts available for distribution to creditors.

11

As to the Confirmation Order, the Debtor argues that the bankruptcy court did not err in confirming the Plan because all the requirements for confirmation were met and he had proven that the chapter 13 plan "will remain the same, regardless of the outcome of the appeal . . . ."

## APPELLATE JURISDICTION

We have jurisdiction to hear appeals from final orders of the bankruptcy court. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 38 (2020). An order which "unreservedly denies" a motion for relief from stay—such as the Order Denying Stay Relief—is a final, appealable order. Ritzen, 589 U.S. at 37-38; see also Harrington v. Mayer (In re Mayer), 28 F.4th 67, 71 (9th Cir. 2022) (holding that order denying stay relief was immediately appealable because it "conclusively resolved" the request for stay relief). A bankruptcy court's order confirming a chapter 13 plan is also final for purposes of appeal. Bullard v. Blue Hills Bank, 575 U.S. 496, 504-05 (2015); United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 269 (2010). Therefore, we have jurisdiction to review the Order Denying Stay Relief and the Confirmation Order.[5]

## STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 496 (B.A.P. 1st Cir. 2016). Because bankruptcy courts have "broad discretion" in assessing cause for relief from the automatic stay under § 362(d)(1), see Sonnax Indus., Inc. v. Tri Component

_____

[5] Although the Appellants listed the orders denying reconsideration in their notices of appeal, they have not briefed any issues relating to those orders. Accordingly, the Appellants have waived their appeals of the orders denying reconsideration. See Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003) (stating that "failure to brief an argument . . . constitute[s] waiver for purposes of appeal") (citations omitted); Zizza v. Pappalardo (In re Zizza), 500 B.R. 288, 292 (B.A.P. 1st Cir. 2013) (declining to review order denying reconsideration where appellant failed to address that ruling in her brief).

Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1288 (2d Cir. 1990), a bankruptcy

court's denial of a motion for relief from the automatic stay is typically reviewed for abuse of

discretion. See Kupperstein v. Schall (In re Kupperstein), 994 F.3d 673, 678 (1st Cir. 2021).

"The bankruptcy court abuses its discretion if it ignores a material factor deserving of significant

weight, relies upon an improper factor or makes a serious mistake in weighing proper factors."

Id. (quoting Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &

Mgmt. Bd. for P.R.), 939 F.3d 340, 346 (1st Cir. 2019)) (internal quotation marks omitted).

As to the Confirmation Order, de novo review is appropriate. See Asociación de

Empleados del Estado Libre Asociado de P.R. v. Mojica Nieves (In re Mojica Nieves), 647 B.R.

809, 824 (B.A.P. 1st Cir. 2023) (providing that where an appeal of an order confirming a chapter

13 plan presents questions of law, the order is reviewed de novo).

## DISCUSSION

I.      The Order Denying Stay Relief Motion

        A.      The Standards Governing Stay Relief Under § 362(d)(1)

Subject to certain exceptions not applicable here, § 362(a)(1) provides that the filing of a

bankruptcy petition stays the "commencement or continuation . . . of a judicial, administrative, or

other action or proceeding against the debtor . . . ." 11 U.S.C. § 362(a)(1). However, "[o]n

request of a party in interest and after notice and a hearing, the court shall grant relief from the

stay . . . for cause . . . ." 11 U.S.C. § 362(d)(1).[6] The Bankruptcy Code does not define "cause"

---

[6] Although § 362(d)(1) requires "notice and a hearing," an evidentiary hearing is not invariably required. See Mission Prod. Holdings, Inc., v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC), 976 F.3d 107, 121 (1st Cir. 2020); Glob. Cable, Inc. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), No. 02 Civ. 9770(RCC), 2006 WL 1559437, at *5 (S.D.N.Y. June 7, 2006); see also 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances"). Here, the bankruptcy court held two hearings on the Stay Relief Motion and allowed the

for purposes of § 362(d)(1), and "[t]here is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) 'cause' exists to lift the automatic stay." Disciplinary Bd. of the Sup. Ct. of Pa. v. Feingold (In re Feingold), 730 F.3d 1268, 1277 (11th Cir. 2013). "Rather, courts evaluating whether to grant stay relief have looked to a variety of case-specific factors . . . ." Id. (citations omitted). The First Circuit has stated that the factors articulated by the Second Circuit in In re Sonnax Indus., Inc., 907 F.2d at 1286, "provide a helpful framework" for determining whether there is cause to grant stay relief to allow litigation to proceed in another forum. In re Fin. Oversight & Mgmt. Bd. for P.R., 939 F.3d at 347 (citation and internal quotation marks omitted). These factors are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in

---

parties to file supplemental briefs. At no time did the Appellants request an evidentiary hearing or seek to present evidence. We are, therefore, unpersuaded by their complaint that the Stay Relief Motion was denied "without allowing for presentation of necessary evidence," suggesting they were deprived of an evidentiary hearing. See Baker v. Bank of Am., N.A., 837 F. App'x 754, 762 (11th Cir. 2020) (stating that appellate courts "generally 'turn a deaf ear to protests that an evidentiary hearing should have been convened but was not' when 'the protestor did not seasonably request such a hearing in lower court'") (citations omitted).

the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Id. (quoting Sonnax, 907 F.2d at 1286).[7]

"[N]ot all of the [Sonnax] factors are relevant in every case," however, and the court is not required "to give each factor equal weight." In re Landmark Fence Co., No. CV 11-00934 AHM, 2011 WL 6826253, at *4 (C.D. Cal. Dec. 9, 2011) (citation omitted). Nor are courts compelled to "rely on any plurality of [Sonnax] factors in deciding whether to lift the automatic stay." In re Patriot Contracting Corp., No. 05-33190 (DHS), 2006 WL 4457346, at *3 (Bankr. D.N.J. May 31, 2006) (citation omitted); see also Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003) (stating that the Sonnax factors "are merely a framework for analysis and not a scorecard"). Ultimately, "broad discretion" is accorded to the bankruptcy court in weighing the Sonnax factors "peculiar to the particular case." Sonnax, 907 F.2d at 1288.

The party moving for stay relief under § 362(d)(1) has the "initial burden to come forward with [prima facie] evidence showing that cause exist[s]." In re Unanue-Casal, 159 B.R. at 94 (alterations in original) (citation omitted). "[O]nce the moving party establishes cause for such relief," the burden then "shifts to the debtor to demonstrate that he is entitled to the stay." Id. at 95 (citation omitted). "If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied." Lapierre v. Advanced Med. Spa Inc. (In re Advanced Med. Spa Inc.), BAP No. EC-16-1087-KuMaJu, 2016 WL 6958130, at *4 (B.A.P. 9th Cir. Nov. 28, 2016) (citation omitted); see also Sonnax, 907 F.2d at 1285.

---

[7] Although these factors (hereafter, the "Sonnax factors") are often attributed to Sonnax, they were, in fact, first identified by the Utah bankruptcy court in In re Curtis, 40 B.R. at 799-800. Many cases which articulate the same factors can be traced to Curtis, including Rivera Guzmán, cited by both parties. Because the bankruptcy court referenced the "twelve-factor test" set forth in Curtis—and then identified those factors it found to be relevant—we conclude that the bankruptcy court applied the correct legal standard when considering the Stay Relief Motion. The Appellants do not argue otherwise.

## B.    Applying the Standards

With these standards in mind, we examine the bankruptcy court's denial of stay relief in this case.  The bankruptcy court denied the Stay Relief Motion due to the Appellants' failure to meet the <u>Sonnax</u> factors.[8]  We conclude, however, that while the bankruptcy court correctly identified the legal standard for determining whether to grant relief from stay to continue litigation in another forum, the court ignored a material issue deserving of significant weight. See <u>In re Kupperstein</u>, 994 F.3d at 678 (discussing abuse of discretion standard).

The bankruptcy court found that the following <u>Sonnax</u> factors weighed against granting stay relief: (1) interference with the bankruptcy case; (2) the cost to the bankruptcy estate to continue litigation in the local court; (3) that no insurer would cover the costs of litigation, although the court acknowledged that this was a disputed issue; (4) the prejudice that the Puerto Rico litigation would have on the interests of other creditors, "taking into consideration that the resources used for the litigation are resources that would not be able to fund the plan"; and (5) the balance of harms.  Although the bankruptcy court did not articulate the undisputed facts underlying its assessment of the <u>Sonnax</u> factors, it is apparent from the bankruptcy court's statements at the October 17, 2023 hearing that its overarching concerns when considering these <u>Sonnax</u> factors were: (1) the cost to the bankruptcy estate to continue the Puerto Rico litigation and the impact those costs would have on the feasibility of the Debtor's plan and the amounts available for distribution to other creditors; and (2) the Appellants' failure to demonstrate that

---

[8]  We recognize that the bankruptcy court articulated a second basis for denying the Stay Relief Motion—the Appellants' "failure to submit supporting documentation in English in support of [their] factual and legal theories pursuant to Local Bankruptcy Rule 4001."  We conclude, however, that as the Puerto Rico litigation involved a personal injury tort claim, the supplemental documentation requirement in P.R. Local Bankruptcy Rule 4001-1 was inapplicable, and the Appellants' failure to submit supporting documentation, such as the insurance policies, was not a valid basis for denying the Stay Relief Motion.

recovery from the insurance companies was "even a possibility." These factors, however, were weighed and considered by the court based on the faulty premise that the bankruptcy court would not need to estimate or liquidate the Appellants' tort claim in the bankruptcy case, even if the claim were not liquidated in the local court.

At the October 17, 2023 hearing, the bankruptcy court stated that estimation of the Appellants' claim in the bankruptcy case was unnecessary, as the Debtor had already agreed that the Appellants could recover the $100,000 held by the local court, and whether the claim was $3.5 or $3.9 million, after reducing the claim by that $100,000, the Appellants would have the largest claim sharing in a small pool of money. The implication of the bankruptcy court's comments is that completing the litigation would be an unnecessary waste of time and money considering the small amount of estate assets available for distribution to creditors.

The bankruptcy court failed to address, however, that if the Appellants' claim is not liquidated in the local court, it will still need to be liquidated (or estimated) in the bankruptcy case before the pro rata distribution of $14,256 to the five holders of allowed unsecured claims can be made from the estate. See 11 U.S.C. § 502(c) (providing that unliquidated claims must be estimated if "the fixing" of the claim "would unduly delay the administration of the case"). This is true even if the percentage of the Appellants' pro rata share is high, and the pool from which distributions will be made is small. Although the Appellants filed a Motion for Estimation Hearing, requesting a hearing to estimate their unliquidated claim under § 502(c), the bankruptcy court has never acted on their request. The record reflects that the Motion for Estimation Hearing remains pending, and the Appellants' claim continues to be an unliquidated claim in an unknown amount. Further, as the claim appears to involve a personal injury tort, absent consent

17

by the parties,[9] a proceeding to determine (or estimate) the claim for purposes of distribution would need to take place in the district court, rather than the bankruptcy court. See 28 U.S.C. § 157(b)(2)(B) & (b)(5) (providing that "the liquidation or estimation of contingent or unliquidated personal injury or wrongful death claims against the estate for purposes of distribution under Title 11" is not a core proceeding and that such claims must "be tried in the district court"). In any event, whether the Appellants' claim is litigated in the local court, the bankruptcy court (upon the parties' consent), or the district court, there are inherent costs associated with such litigation. There is no indication in the record that the bankruptcy court made its own assessment of those costs. For these reasons, the bankruptcy court's decision to deny stay relief because litigating the Appellants' claim in the local court would be costly for the bankruptcy estate—without acknowledging that the claim will still need to be estimated or liquidated in some court—constituted error.

As the cost and burden of liquidating the claim in the local court was the linchpin of the bankruptcy court's cause analysis under the Sonnax factors, we conclude that the bankruptcy court abused its discretion in denying the Stay Relief Motion on that basis. And, because we have determined that the bankruptcy court abused its discretion when assessing the Sonnax factors, we need not reach the issue of whether the Appellants needed to demonstrate at a preliminary hearing that they had the ability to recover from the insurance companies.

---

[9] "Because [28 U.S.C. §] 157(b)(5) does not implicate a bankruptcy court's subject matter jurisdiction, it is possible for creditors to waive or forfeit any objections to the bankruptcy court's [estimation or] final resolution of the claim." Younge v. Tribune Media Co. (In re Tribune Media Co.), C.A. No. 16-226 (GMS), 2017 WL 2622743, at *4 (D. Del. June 16, 2017), aff'd, 902 F.3d 384 (3d Cir. 2018); see also Stern v. Marshall, 564 U.S. 462, 480 (2011) (ruling that 28 U.S.C. § 157(b)(5) does "not have the hallmarks of a jurisdictional decree" and claimant can consent to bankruptcy court's determination of a personal injury tort claim).

18

Therefore, we **VACATE** the Order Denying Stay Relief and **REMAND** this matter to the bankruptcy court for further proceedings consistent with this opinion.

## II.     The Confirmation Order

We turn now to the Appellants' argument that the bankruptcy court erred in confirming the Plan without holding an estimation hearing on their claim under § 502(c).[10] We find the Appellants' argument unavailing, as discussed below.

### A.     Plan Confirmation Under §§ 1325, 1322

Section 1325(a) provides, in pertinent part, that the bankruptcy court "shall confirm" a debtor's chapter 13 plan if it meets the specific requirements therein and "complies with the [other] provisions of" chapter 13. 11 U.S.C. § 1325(a); see also Espinosa, 559 U.S. at 277. "Consequently, Chapter 13 plans must comply with the plan content requirements set forth in § 1322 . . . ." LVNV Funding, LLC v. Harling, 852 F.3d 367, 371 (4th Cir. 2017) (citing 11 U.S.C. §§ 1322, 1325). The bankruptcy court, therefore, was required to determine whether the Plan met the requirements of §§ 1322 and 1325, and it concluded that it did. Indeed, the Appellants did not contend before the bankruptcy court, and do not argue now, that the Plan failed to comply with any of the requirements for confirmation set forth in those provisions. Their only argument is that the Plan should not have been confirmed before the bankruptcy court held an estimation hearing on their claim under § 502(c).

---

[10] The Appellants' argument that the bankruptcy court erred by confirming the Plan without "addressing" their Objection to Confirmation is unavailing. Although the bankruptcy court did not expressly overrule the Objection to Confirmation, such a ruling is implicit in the Confirmation Order. See Spokane Ry. Credit Union v. Gonzales (In re Gonzales), 172 B.R. 320, 325 (E.D. Wash. 1994) (stating that by confirming plan, court "implicitly overruled" creditors' objection to plan). We also note that the Appellants' objection to confirmation based on the pending Stay Relief Motion was moot, as that motion was resolved at the time the Plan was confirmed. Therefore, the only issue before the court was whether the pendency of the Motion for Estimation Hearing precluded Plan confirmation.

19

Section 502(c) provides that a claim must be estimated if the claim is contingent or unliquidated and "the fixing" of the claim "would unduly delay the administration of the case." 11 U.S.C. § 502(c). "Estimation . . . contemplates that the bankruptcy court will, in effect, put itself in the place of a nonbankruptcy court or jury to estimate whether a debtor is liable to the claimant and, if so, to estimate the amount of the debt." In re Audre, Inc., 202 B.R. 490, 493 (Bankr. S.D. Cal. 1996), aff'd, 216 B.R. 19 (B.A.P. 9th Cir. 1997).

There is, however, no requirement in the Bankruptcy Code that unliquidated unsecured claims must be estimated before a plan can be confirmed. On the contrary, "[t]he claims allowance process of [§] 502, including the [§] 502(c) claim estimation process, *is independent from the plan confirmation process.*" In re Haskins, 563 B.R. 177, 185 (Bankr. W.D. Va. 2017) (emphasis added); see also LVNV Funding, LLC, 852 F.3d at 372-73 ("Nothing in either § 502, § 1325, or elsewhere in the Bankruptcy Code ties adjudication of the allowance of an unsecured creditor's claim to the process or event of Chapter 13 plan confirmation."); In re Waldschmidt, 605 B.R. 860, 864 n.6 (Bankr. N.D. Ind. 2019) (stating that "confirmation and claims determination are separate and distinct proceedings which should not be conflated") (citations omitted). "While frequently interrelated, each operates independently in chapter 13 cases." In re Haskins, 563 B.R. at 185 n.8. "Both processes track different timelines and employ separate procedures." Id. Because § 1324 mandates a short time frame for holding the confirmation hearing, "confirmation often occurs before all claims, and objections thereto, are filed." Id. Therefore, "[c]laims do not need to be determined . . . before the court confirms a plan." In re Waldschmidt, 605 B.R. at 864 (citation omitted). Accordingly, the bankruptcy court did not

need to estimate the Appellants' contingent and unliquidated unsecured claim before confirming the Plan.[11]

For these reasons, we conclude that the bankruptcy court did not err by confirming the Plan without first holding an estimation hearing on the Appellants' claim under § 502(c). The Confirmation Order, therefore, is **AFFIRMED**.

## CONCLUSION

For the foregoing reasons, we **VACATE** the Order Denying Stay Relief and **REMAND** the matter to the bankruptcy court for further proceedings consistent with this opinion. The Confirmation Order is **AFFIRMED**. The appeals of the two orders denying reconsideration have been waived and, therefore, are **DISMISSED**.

---

[11] To the extent the Appellants argue that an estimation hearing was needed "to ascertain Bankruptcy Court jurisdiction under . . . [§] 109(e)," that argument also fails. A determination of whether a debtor is eligible for chapter 13 relief focuses on the amount of the debtor's noncontingent, liquidated debts as of the petition date. See 11 U.S.C. § 109(e). A post-petition estimation of the Appellants' claim under § 502(c) would not render the underlying debt noncontingent and liquidated as of the petition date for purposes of § 109(e) and, therefore, would not impact the Debtor's eligibility for chapter 13. See In re Stouder, No. 12-21807, 2013 WL 504177, at *3 (Bankr. D. Kan. Feb. 11, 2013) (recognizing that estimation of a claim under § 502(c) is "outside the ambit of th[e] Court's consideration as to the §109(e) debt limits").