# United States Court of Appeals

## For the First Circuit

No. 20-1472

IN RE: DONALD C. KUPPERSTEIN,

Debtor,

DONALD C. KUPPERSTEIN,

Appellant,

v.

IRENE SCHALL, Personal Representative of the Estate of Fred
Kuhn; and EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES,

Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Thompson, Circuit Judges.

David G. Baker for appellant.
Roger Stanford, with whom Moses Smith, Markey & Walsh was on
brief, for appellee Irene B. Schall.
Paul T. O'Neill, Assistant General Counsel, for appellee
Executive Office of Health and Human Services.

April 22, 2021

**THOMPSON, <u>Circuit Judge</u>.**

**BACKGROUND**

The short story, sticking with only what is relevant here, is that years ago, Donald C. Kupperstein, with the help of his comrade, Thomas Sheedy, improperly entangled himself with a piece of real property on Reservoir Street in Norton, Massachusetts and lined his pockets with rents from various tenants he installed.[1] <u>In re Kupperstein</u>, 943 F.3d 12, 15-16 (1st Cir. 2019). That property belonged to the estate of Fred Kuhn (the estate is now managed by Irene Schall) and that estate owed a debt to the Massachusetts Office of Health and Human Services, better known as "MassHealth."[2] <u>Id.</u> As a result of Kupperstein's disinterest in relinquishing his claim to the property, all of these parties ended up in Massachusetts Probate Court, Suffolk Superior Court, and Massachusetts Land Court. Motions were filed, orders were entered, and, where it mattered, Kupperstein lost on the merits. Ultimately, the probate court voided the property's transfer (so

---

[1] We have previously detailed the made-for-TV movie about how Kupperstein (who remains licensed to practice law in Massachusetts) and Sheedy duped the only child of Fred Kuhn, the property's owner, after Kuhn's death, into selling the property for a "pittance" and both ultimately ended up owing a lot of money to the Commonwealth of Massachusetts. <u>See</u> <u>In re Kupperstein</u>, 943 F.3d 12, 15 (1st Cir. 2019).

[2] MassHealth is empowered to recover benefits from a beneficiary's estate after death and, in this case, filed a petition with the Massachusetts Probate Court to ensure payment. <u>See</u> Mass. Gen. Laws ch. 118E, §§ 31, 32.

- 3 -

that Kupperstein and Sheedy had no claim to it) and ordered the duo to pay to MassHealth "any and all" rents collected from the property. Id. at 16-18. Kupperstein and Sheedy disregarded the probate court's order and continued to rent the property for their own gain. Id. at 17. In mid-2017, Sheedy signed over his interest in the property solely to Kupperstein, but neither the estate nor MassHealth saw a dime. Id. So, on August 4, 2017, the probate court held Kupperstein and Sheedy in contempt.

Evidently unphased, Kupperstein rented the property to new tenants about a month later. Id. The probate court did not look kindly upon this and issued an order forbidding Kupperstein from executing any agreements involving the property, voiding anything he had previously executed, and banning Kupperstein, Sheedy, and their agents from entering the property at all. Id.

On December 22, 2017, the probate court again found Kupperstein and Sheedy in contempt and reiterated the order for each to pay the rents they had been collecting to the estate or MassHealth.[3] Id. The probate court also ordered that the pair hand in any keys or other ways to access the property and all

---

[3] In the months since the last contempt order, Kupperstein had sued the estate in Massachusetts Land Court, seeking a declaration that he was the rightful owner of the property. He had neglected to mention the litigation in the probate court and the order that said otherwise. Once the land court got hip to Kupperstein's game, it dismissed the case because it was brought in bad faith and ordered that he pay attorneys' fees to MassHealth and the estate for their trouble.

documents and leases associated with the property.  Id.  Plus, the probate court threatened to jail Kupperstein and Sheedy for thirty days if they did not pay MassHealth $5,400.  Id.  Kupperstein and Sheedy turned in only $3,000 and no keys or leases.  Id.  Unimpressed, the probate court set a hearing for January 12, 2018, and directed each man to explain why he should not be jailed for contempt for thirty days.  Id.

On January 11, 2018, the day before his contempt hearing, Kupperstein filed for bankruptcy in the United States Bankruptcy Court for the District of Massachusetts.  Id. at 17-18.  To keep things interesting, Kupperstein listed the Kuhn estate as his own property, valued at $350,000.  Id.

Kupperstein did show up for his January 12 court date and explained to the probate court that it could not touch him because his bankruptcy filing triggered an automatic stay of court proceedings against him.  See 11 U.S.C. § 362(a).[4]  The probate court was unmoved and instead put Kupperstein in a holding cell for the day for violating the court's orders four times.  In re Kupperstein, 943 F.3d at 18.  The probate court yet again ordered Kupperstein to give up the keys to the property, but he maintained he did not have them.  Id.

_____

[4] Generally, a bankruptcy filing causes an automatic stay that halts other lawsuits against the debtor until a federal court lifts the stay.  11 U.S.C. § 362(a).

At the next court date, Kupperstein was almost ordered to serve his thirty-day sentence, but then produced $5,400 in cash and the elusive keys to the property.  Id.

Then, he vanished.  Id.  The probate court held Kupperstein in contempt twice more for missing three court dates and continuing to violate its previous orders.  Id.  The probate court ordered Kupperstein and Sheedy to pay over $50,000 in outstanding rents and over $10,000 in attorneys' fees as sanctions for their repeated flouting of the court's orders.  Id.  To drive its point home, the court warned that Kupperstein and Sheedy would be jailed for thirty days unless they worked out a payment plan with MassHealth.  Id.  The probate court issued warrants for his arrest, but Kupperstein remained at large.  Id.

Tired of waiting for Kupperstein to return from his sojourn, Schall, in her capacity as the estate's representative, and MassHealth each filed motions in the bankruptcy court to lift the automatic stay as it applied to any state court actions, so those cases could proceed.[5]  Id.  Kupperstein (through counsel because he was still AWOL) opposed those motions and moved that the bankruptcy court hold MassHealth in contempt and impose

_____

[5] For instance, Suffolk Superior Court had entered judgment ordering that Kupperstein pay the amounts ordered by the probate court, plus over $6,000 in costs and fees awarded by the land court, and $575,240.37 to MassHealth, representing three times the amount initially owed to MassHealth by the estate.  In re Kupperstein, 943 F.3d at 18 n.6.

- 6 -

monetary sanctions because MassHealth participated in the probate court's various contempt proceedings in violation of the automatic stay.  Id. at 18.

In nearly identical orders, the bankruptcy court found "good cause" to "lift[]" the stay and ordered that the state court actions could proceed, except that Schall and MassHealth could "not seek to enforce against . . . Kupperstein, any judgment with respect to the $191,741.79 MassHealth reimbursement claim or attempt to collect from Kupperstein all or any part thereof."  The court lifted the automatic stay in the state court actions "[i]n all other respects . . . including the assessment by the courts against Kupperstein of any restitution and sanction amounts."  In support of its decision, the bankruptcy court cited In re Dingley, 852 F.3d 1143 (9th Cir. 2017) and Alpern v. Lieb, 11 F.3d 689 (7th Cir. 1993), two cases where appellate courts affirmed the application of the so-called "police power" exception to the automatic stay.

Soon after, the bankruptcy court denied Kupperstein's motion to hold MassHealth in contempt and to impose sanctions.  In re Kupperstein, 943 F.3d at 19.  Citing the same cases it cited in its orders granting relief from the stay, the bankruptcy court analyzed the police power exception in more detail and noted that "[a] court's imposition and enforcement of a monetary sanction for contemptuous conduct is an exercise of its police power and is

excluded from the automatic stay by Bankruptcy Code § 362(b)(4)." So, the state court actions that "involved the imposition and enforcement of sanction awards against [Kupperstein] did not violate the automatic stay" and, therefore, neither did MassHealth's participation in those proceedings.

Miffed, Kupperstein appealed those decisions to the district court, but fared no better.[6]  In re Kupperstein, 943 F.3d at 19.  The district court read all three orders "as having rested -- at least in part, as a separate and independent ground -- on a discretionary determination that relief from the automatic stay was warranted 'for cause' under § 362(d)(1)."  In re Kupperstein, Nos. 18-11772-LTS, 18-11851-LTS, 2020 U.S. Dist. LEXIS 70883, at *11 (D. Mass. Apr. 20, 2020).  The district court then noted that Kupperstein waived any argument on that point by failing to address it in his briefing.  Id. at *12.  Taking a belt and suspenders approach, the district court further concluded that the bankruptcy court did not abuse its discretion when finding the balance of the equities favored lifting the stay.  Id.  Turning to the denial of Kupperstein's motion to hold MassHealth in contempt, the district court affirmed the bankruptcy court's decision, echoing the bankruptcy court's reasoning.  Id. at *14-17.

---

[6] That appeal first bounced from the district court to us (to deal with a procedural issue) and then back to the district court with instructions to resolve the appeal on the merits.  See In re Kupperstein, 943 F.3d at 15.

Kupperstein now appeals, asking us to hold that the automatic stay is still in effect and remand this case to the bankruptcy court to sanction MassHealth for violating that stay.[7]

**THE POLICE POWER EXCEPTION**

When a debtor files for bankruptcy, the petition activates an automatic stay of various judicial and administrative proceedings against the debtor. See 11 U.S.C. § 362(a). The intention is to "give the debtor breathing room by 'stop[ping] all collection efforts, all harassment, and all foreclosure actions.'" In re Soares, 107 F.3d 969, 975 (1st Cir. 1997) (quoting H.R. Rep. No. 95-595, at 340 (1977)). To that end, the stay forbids judicial proceedings against the debtor to progress (even those that had begun before the commencement of the bankruptcy case) until a federal court lifts the stay or closes the case. See id. (citing 11 U.S.C. § 362(a)).

The filing of a bankruptcy petition does not stay a governmental proceeding by "a governmental unit . . . to enforce [its] police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or

---

[7] Without any support, Kupperstein also instructs us that we ought to order his "release from any further incarceration." Even if we had a stack of "Get Out of Jail Free" cards, we seriously doubt their application to state court contempt proceedings. Plus, we note that at the time his brief was filed, the record indicated Kupperstein had returned, was briefly in custody, and was already again at liberty.

proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. § 362(b)(4).

To determine if the police power exception applies, we evaluate whether the government's action is to effectuate a "public policy" or to further its own "pecuniary interest." Parkview Adventist Med. Ctr. v. United States, 842 F.3d 757, 763 (1st Cir. 2016) (quoting In re Nortel Networks, Inc., 669 F.3d 128, 140 (3d Cir. 2011)). If "the governmental action 'is designed primarily to protect the public safety and welfare,'" then it passes the "public policy" test and is excepted from the automatic stay. Id. (quoting In re McMullen, 386 F.3d 320, 325 (1st Cir. 2004)). In contrast, if the government is attempting to proceed against the debtor for a "pecuniary purpose," that is, "to recover property from the estate," the police power exception offers no shelter and the proceeding is stayed. Id. This exception intends to discourage debtors from filing bankruptcy petitions "for the purpose of evading impending governmental efforts to invoke the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare." In re McMullen, 386 F.3d at 324-27 (distinguishing proceedings to protect the public in the future from those that "seek recompense for [] alleged financial losses").

- 10 -

Though we have not opined precisely on the question at hand, the bankruptcy court cited in its orders two cases where sister circuits applied the "public policy" or "pecuniary interest" test for the police power exception to contempt proceedings. In In re Dingley, the Ninth Circuit held that civil contempt proceedings were excepted from a bankruptcy's automatic stay because those "proceedings are intended to effectuate the court's public policy interest in deterring litigation misconduct." 852 F.3d at 1147-48. In Alpern v. Lieb, the Seventh Circuit similarly held that a proceeding to impose sanctions under Fed. R. Civ. P. 11 was excepted from the automatic stay of bankruptcy, even though the sanctions were monetary where the court ordered the debtor to pay attorneys' fees for his misconduct in a different proceeding. 11 F.3d at 690. Dismissing the notion that a Rule 11 proceeding is not excepted, even though the result could be the payment of money to an individual, the court noted that the purpose of a Rule 11 sanction is to punish "unprofessional conduct in litigation, . . . just as an order of restitution in a criminal case is a sanction even when it directs that payment be made to a private person rather than to the government." Id. Relying on these cases, the bankruptcy court wrote that the purpose of civil contempt proceedings is not to line the government's pockets, but "to uphold the dignity of the court and the judicial process, to punish bad behavior and to educate the public in the importance of

- 11 -

obeying court orders."  In re Kupperstein, 588 B.R. 279, 280-81 (Bankr. D. Mass. 2018).

## STANDARD OF REVIEW

Where, as here, we serve as a "second tier of appellate review," we look through the district court's determination and analyze the bankruptcy court's decision directly.  In re Montreal, Me. & Atl. Ry., Ltd., 956 F.3d 1, 5-6 (1st Cir. 2020).  As usual, we review the court's factual findings for clear error and accord no deference to its legal conclusions.  Id. at 6.  When considering the type of orders at issue here (decisions on motions for relief from a stay and for sanctions), we only reverse where the bankruptcy court abused its discretion.  See In re Soares, 107 F.3d at 973 n.4; Hawkins v. Dep't of Health & Human Servs. for N.H., Comm'r, 665 F.3d 25, 31 (1st Cir. 2012).  The bankruptcy court abuses its discretion "if it ignores 'a material factor deserving of significant weight,' relies upon 'an improper factor' or makes 'a serious mistake in weighing proper factors.'"  In re Fin. Oversight & Mgmt. Bd. for P.R., 939 F.3d 340, 346 (1st Cir. 2019) (quoting In re Whispering Pines Estates, Inc., 369 B.R. 752, 757 (B.A.P. 1st Cir. 2007)).

## OUR TAKE

The core dispute is whether the probate court's contempt proceedings and resultant penalties are excepted from the automatic stay (as the bankruptcy court held they were) and

therefore MassHealth's participation did not merit sanctions or whether those proceedings are not excepted, opening a can of worms about whether the bankruptcy court likely abused its discretion in partially lifting the stay and not sanctioning MassHealth.[8]  We begin with a de novo review of the legal question of the reach of the police power exception and then evaluate whether the bankruptcy court abused its discretion in each of the challenged orders.

*The Police Power Exception*

First, all agree we ought to evaluate the probate court's orders through the overlapping lenses of "two interrelated, fact-dominated inquiries":  the "public policy" test and the "pecuniary purpose" test.  In re McMullen, 386 F.3d at 325.  MassHealth and Schall argue that the probate court was merely serving a compelling public policy of enforcing compliance with court orders.  For many months prior to his bankruptcy filing, the probate court had been ordering Kupperstein to follow the rules, stop masquerading like he owned the Kuhn house and turn over the rent he illicitly collected, and pay the attorneys' fees he forced others to expend each time he failed to comply.  Kupperstein consistently declined.

---

[8] There does not appear to be any dispute that the superior court, land court, and probate court fall within the Code's definition of "governmental unit," defined as a "department, agency, or instrumentality of . . . a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state."  11 U.S.C. § 101(27).  The question is more precisely whether the contempt proceedings are excepted from the stay.

- 13 -

Kupperstein, for his part, sees this as a classic case of the government pursuing a pecuniary interest because there is money involved in the probate court's orders. But that ignores the full range of the probate court's instructions. The probate court's contempt orders included instructions to Kupperstein to turn over keys to the property, to cease leasing the property to tenants as the landlord and to not engage in any new leases, and to turn over any documents he had previously executed regarding renting the property. These orders of the court are plainly not an attempt to collect money and there is simply nothing in the "pecuniary interest" test or the Bankruptcy Code, generally, forbidding a court from ordering that a debtor hand over the keys to a house that he does not own. Rather, a court (or other governmental agency) "acts in the interest of public safety and welfare" when it ensures unscrupulous actors do not have keys to property over which they have no ownership. See In re Spookyworld, Inc., 346 F.3d 1, 9 (1st Cir. 2003) (holding that a town's proceedings to enjoin a company for failing to install sprinkler systems in its structures in violation of the building code constituted actions undertaken for the benefit of public safety); In re McMullen, 386 F.3d at 326-27 (finding that a board's proceedings to revoke an unscrupulous real estate broker's license constituted actions taken to benefit the public welfare). Kupperstein has no counter-argument to this (not that a strong one

could be conjured anyway) because he entirely ignores it in his brief, waiving any challenge to the bankruptcy court's order lifting the stay as it applies to those provisions of the probate court's order. See Marek v. Rhode Island, 702 F.3d 650, 655 (1st Cir. 2012).

Turning to the aspects of the probate court's order involving money, Kupperstein does expend many pages of his brief on the argument that the police power exception does not apply to MassHealth's attempts to collect the underlying debt in the probate court, and he's right. But, the record shows that no one is currently trying to collect on that judgment. The bankruptcy court order explicitly maintains the automatic stay for any activity related to judgments against Kupperstein for the nearly $200,000 owed to MassHealth via the Kuhn property. And, post-petition, no court ordered Kupperstein to satisfy the judgment against him. As such, Kupperstein's extensive argument on this point is merely fighting a straw man, and we need engage no further.

So, finally, what about the aspects of the probate court's contempt orders that require Kupperstein to pay sanctions for repeated violations of court orders and disgorge the rents he collected (in violation of court orders) from tenants (living on a property over which Kupperstein had no legal control)? He argues that any attempt by the probate court to force Kupperstein to hand over so much as a dime is automatically for a "pecuniary purpose."

But this ignores the distinction between a judgment prematurely awarding assets to creditors ahead of the process permitted by the bankruptcy court (exactly the sort of thing the automatic stay is intended to prevent, see In re Spookyworld, 346 F.3d at 10) and an order commanding disgorgement of ill-gotten gains accumulated in direct violation of a court order. Federal courts regularly approve the application of the police power exception to the latter. See United States v. LASR Clinic of Summerlin, LLC, No. 2:19-cv-00467-GMN-NJK, 2020 WL 6044550, at *2 (D. Nev. Oct. 12, 2020) (approving of police power exception to permit the government to pursue False Claims Act case to recover improper government payments to debtor); In re RGV Smiles by Rocky L. Salinas D.D.S. P.A., Nos. 20-70209, 20-70210, 2021 WL 112182, at *6 (Bankr. S.D. Tex. Jan. 6, 2021) (applying police power exception to state Medicaid fraud statute to permit government to pursue funds illegally claimed by debtor); Al Stewart v. Holland Acquisitions, Inc., No. 2:15-cv-01094, 2021 WL 1037617, at *1 (W.D. Pa. Mar. 18, 2021) (permitting Fair Labor Standards Act case to proceed under police power exception, including action for back pay, where debtor allegedly withheld pay legally owed to employees). The automatic stay's "main purpose is to prevent some private creditors from gaining priority on other creditors." In re Spookyworld, 346 F.3d at 10. Neither MassHealth nor Schall would gain any priority on Kupperstein's other creditors because the bankruptcy court order

- 16 -

does not permit the probate court to command Kupperstein to pay his debts to either party.  Any claim MassHealth or Schall has to Kupperstein's estate remains unchanged by this order.  See Chao v. Hosp. Staffing Servs., Inc., 270 F.3d 374, 389 (6th Cir. 2001) (applying pecuniary purpose test to ensure government action would not give certain creditors an "advantage" over other creditors).

Even if the financial aspects of the probate court's orders arguably serve a pecuniary purpose (though we hold they do not), that still would not change the result of our analysis. Where the application of the police power exception contains various elements, some of which effectuate a public policy and others of which could involve pecuniary interests, we examine the totality of the circumstances and what "the governmental action 'is designed primarily to [do].'"  Parkview Adventist Med. Ctr., 842 F.3d at 763 (quoting In re McMullen, 386 F.3d at 325).  Here, the rent payments and attorneys' fees only manifested after Kupperstein ignored the probate court's earlier orders to relinquish the keys, stop renting the house to others, and stop pocketing the proceeds.  Even after the bankruptcy filing, some of the probate court's contempt orders did not demand the payment of any money and, instead, reiterated the court's primary desire to force Kupperstein to cede control of the house.  Kupperstein's own refusal of earlier orders that had no money at stake created this situation and our case law is clear that we do not reward debtors

- 17 -

who submit bankruptcy petitions to avoid governmental orders. See In re McMullen, 386 F.3d at 324-25 (noting that the police power exception discourages the submission of bankruptcy petitions "for the purpose of evading impending governmental efforts to invoke the governmental police powers to enjoin and deter ongoing debtor conduct which would seriously threaten the public safety or welfare"). Put another way, "[a] litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy." Alpern, 11 F.3d at 690. Any way we slice it, the probate court's contempt orders pass the public policy test and are not to serve a pecuniary purpose.

Kupperstein raises two additional arguments that merit our discussion. Pointing to 11 U.S.C. § 362(b)(4), he believes that the "plain language" of the Code makes our resolution of this case "crystal clear." On its face, the Code's plain language does not address this question at all. Yet, best we can cobble together, based on the assumptions wrapped up in Kupperstein's contentions, he seems to be trying to tell us the following: the police power exception does not apply to enforcing "money judgement[s]" and any court action with money involved is an action to enforce a "money judgment." Kupperstein's argument here is actually a repackaging of his contention that the probate court order is for a pecuniary purpose. On that point, we remain unmoved.

- 18 -

Finally, Kupperstein explains, we are bound by our precedent in Parker v. United States, which he says stands for the proposition that civil contempt proceedings are for a pecuniary purpose and are therefore subject to the automatic stay. 153 F.2d 66 (1st Cir. 1946). But Parker is inapplicable here. In that case, issued prior to the promulgation of the Bankruptcy Code, the court considered whether a pre-bankruptcy civil contempt award was dischargeable after the close of bankruptcy. Id. at 67-68. The court did not wrestle with any of the questions at issue here. Kupperstein cites to it for its lengthy discussion of the differences between civil and criminal sanctions, but there is no dispute that the probate court orders here are civil in nature (having been imposed to coerce Kupperstein's compliance with valid Massachusetts court orders) and that the Code permits some civil actions to proceed during the automatic stay. See 11 U.S.C. § 362(b).

With no more arguments to address and considering the totality of the circumstances, we conclude the probate court's contempt orders are excepted from the automatic stay under the police power exception.[9]

---

[9] Because we resolve the issues on appeal based on the police power exception, we need not address the bankruptcy court's lifting of the automatic stay "for cause" under 11 U.S.C. § 362(d)(1). We note here, however, that Kupperstein's argument on appeal that he "has carefully reviewed the appellees' motions for relief from the automatic stay, and can find no reference to that section in the

- 19 -

*The Merits of Kupperstein's Appeals*

With the law on this issue firmly established, our resolution on the merits of the bankruptcy court's orders becomes simple. The bankruptcy court did not abuse its discretion when lifting the stay as it applied to the probate court's contempt proceedings because those proceedings were excepted from the stay under the police power exception. Similarly, the bankruptcy court did not abuse its discretion when it declined to hold MassHealth in contempt or levy any sanctions against it for its participation in the probate court's contempt proceedings. Those proceedings were not stayed by the automatic stay, so MassHealth's participation was proper.

## CONCLUSION

The bankruptcy court's decisions were correct and the district court properly affirmed. We **affirm** the district court's order and award costs to the appellees.

---

motions" is unavailing and misleading, as MassHealth's memorandum in support of its motion for stay relief, which was before the bankruptcy court, clearly lays out an entire section of argument premised on 11 U.S.C. § 362(d)(1). Indeed, it is Kupperstein who should be concerned about waiver, as he doubles down in his appellate briefing by failing to address the merits of the § 362(d)(1) argument, only arguing waiver and that the bankruptcy court's use of "good cause" was boilerplate language, despite the fact that the court was briefed on this issue. The district court's emphasis on the alternative grounds of § 362(d)(1) gave Kupperstein ample notice and opportunity to address the merits of any such argument.