**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

---

**BAP NO. PR 25-005**

---

**Bankruptcy Case No. 23-02210-MCF**

---

**ERNESTO RAFAEL IRIZARRY SANTIAGO,**
**d/b/a Ernesto R. Irizarry Attorneys at Law,**
**Debtor.**

---

**ERNESTO RAFAEL IRIZARRY SANTIAGO,**
**Appellant,**

**v.**

**FIRSTBANK PUERTO RICO,**
**Appellee.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Mildred Cabán, U.S. Bankruptcy Judge)**

---

**Before**
**Fagone, Chief U.S. Bankruptcy Appellate Panel Judge;**
**and Panos and Bacher, U.S. Bankruptcy Appellate Panel Judges.**

---

**Javier Vilariño, Esq., on brief for Appellant.[1]**
**Kevin Miguel Rivera-Medina, Esq., on brief for Appellee.**

---

**June 2, 2026**

---

[1] Javier Vilariño withdrew as counsel of record to the appellant after submitting the reply brief. The appellant has proceeded without representation in this appeal.

**Bacher, U.S. Bankruptcy Appellate Panel Judge.**

The debtor was in chapter 11 for 18 months when the bank moved for relief from the automatic stay to pursue its remedies against his residence, which the debtor proposed to sell to fund his plan. Focusing on the debtor's failure to sell the property during the case and a district practice allowing debtors 18-24 months to do so, the bankruptcy court entered an order: (1) granting the bank relief from the automatic stay if the property was not sold by the case's two-year anniversary and ordering the debtor to make adequate protection payments; (2) ordering the debtor to file an amended plan "in accordance with" the order within two weeks; and (3) denying the debtor's application to employ a plan administrator (the "Order"). The debtor appealed the Order.

For the reasons set forth below, the Panel: (1) **REVERSES** and **REMANDS** the Order as to the stay relief ruling; (2) **REVERSES** and **REMANDS** the Order as to the ruling directing the debtor to file an amended plan; and (3) concludes that it lacks jurisdiction to review the Order's denial of the application to employ a plan administrator, and **DISMISSES** the appeal as to this ruling.

## BACKGROUND[2]

### I. Relevant Events in the Bankruptcy Case

In July 2023, Ernesto Rafael Irizarry Santiago (the "Debtor") filed a voluntary petition for chapter 11 relief. His bankruptcy schedules reflect that he owns real property located at 320 15th St., Dorado Beach East, Dorado, Puerto Rico, which he valued at $5.4 million. Firstbank

---

[2] Unless otherwise indicated, all references to specific statutory sections are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Puerto Rico ("Firstbank") filed a proof of claim asserting a claim of approximately $2.3 million secured by a mortgage on the property, including pre-petition arrears of nearly $1.2 million.

The Debtor filed an amended disclosure statement and chapter 11 plan proposing a sale of the property that would yield sufficient funds to pay all creditors' claims in full. The Debtor estimated the sale would occur by June 30, 2024, unless extended with Firstbank's consent. The bankruptcy court approved the amended disclosure statement and scheduled a hearing on confirmation of the amended plan. Firstbank filed an objection to confirmation in which it asserted primarily that the plan was infeasible.

The bankruptcy court rescheduled the confirmation hearing multiple times between June 2024 and February 2025. During this time, the Debtor filed multiple motions advising the court of his marketing efforts, his reduction of the property's listing price from $6.5 million to $4.75 million, and his receipt of multiple offers.

In February 2025, about 18 months into the case, Firstbank filed a motion for relief from stay. Firstbank alleged the Debtor's failure to make post-petition payments of approximately $218,000 deprived Firstbank of "having its security interest protected as provided under the Bankruptcy Code" and constituted "cause" for stay relief under § 362(d)(1). Firstbank did not assert any other grounds for stay relief.

In response, the Debtor argued Firstbank was adequately protected because the property had an equity cushion of about $1.7 million. The Debtor additionally proposed to make monthly adequate protection payments to Firstbank of $4,887.35, funded by a family member, to cover accruing interest and prevent the debt from increasing until the sale.

After Firstbank filed the stay relief motion, the Debtor filed a second amended plan and then a third amended plan (the "Plan") in which he sought to sell the property by

3

September 4, 2025. Under the Plan, if the property was not sold by that date, a plan administrator would have six months to sell the property, otherwise the case would automatically convert to one under chapter 7. The Debtor also filed a separate application to employ a plan administrator.

Firstbank objected to the Plan, arguing it failed to comply with § 1129(b)(2)(A). Firstbank (1) opposed the Debtor's proposal to have additional professionals attempt to sell the property, (2) contended the Plan's dependence on third parties (presumably to purchase the property and to make the adequate protection payments) suggested the Plan was infeasible, and (3) asserted the continued delay without receiving its contractual payments constituted impairment.

## II.    The Hearing and Order on Appeal

On April 2, 2025, the bankruptcy court held a final, non-evidentiary hearing on the stay relief motion and Plan confirmation. Firstbank noted that the Debtor had not paid his mortgage in 140 months and argued that the reductions of the listing price showed the property was losing value. Firstbank insisted that there is no benefit to having equity in property if no one is available to purchase it. Firstbank said that in evaluating whether the equity cushion constituted adequate protection, the court should consider the Debtor's inability to sell the property during the case, his lack of income, the property's unstable value, and the growing arrears. Firstbank refused to accept the proposed adequate protection monthly payments.

The Debtor argued there was no evidence that Firstbank was not adequately protected. He suggested that the reductions in the property's listing price reflected exercises of his "best business judgment," not reductions in the market. The Debtor stated that his evidence of the

4

property's value at a minimum of $4.25 million, along with a payoff statement establishing Firstbank's debt at $2.478 million, demonstrated a $2 million equity cushion.

Firstbank reiterated that it sought stay relief under § 362(d)(1), not under (d)(2), agreed there was equity in the property, and confirmed there were no other factual disputes. Following this, the court ruled:

> In this district, generally a debtor is given between eighteen to twenty-four months to sell property. The debtor has been in bankruptcy since July 20, 2023. That is approximately eighteen months. Debtor will be granted until July 20, [20]25 to sell the property.

The court further ruled: "If the debtor fails to sell the property on or before July 20th, 2025, then the stay will be lifted without further hearing or order." The court also ordered the Debtor to make adequate protection payments to Firstbank of $4,800.00 per month. Although the Debtor specifically asked for clarification on the finding of cause to lift the stay, the court did not elaborate. The court admitted no evidence and made no findings about the equity cushion, the value of the property, bad faith, lack of adequate protection, or any specific cause.

> Regarding confirmation, the court ruled:

> The debtor has been given a limit [to sell the property], July 20, 2025. That's approximately four months from today. So the way the plan is being proposed cannot be confirmed because the plan is contemplating September 2025 to sell, and if not sold then a plan administrator will come aboard and then have another six months and then a conversion to a Chapter 7, so that the trustee could sell. So that framework is not feasible in light of the order issued today. So the plan has to be modified.

> The case that you had mentioned, Paonesa, the Court in a sense frowned upon the plan administrator. That's just more expenses. And this debtor's been given many months to try to sell. And so the debtor's given one more opportunity to try to sell it as soon as possible. So the way the plan is structured, there's no way I'm going to confirm it.

5

When the Debtor referred to "the roadmap proposed in the plan," the court interjected:

> No, it doesn't have a beginning or an end because we have September for this current [broker] to sell, and then another six months for another plan administrator to sell, and then a trustee to sell. . . . I don't know what's the situation that the property hasn't been sold. It is clear that Dorado East is a very lucrative area. That's common knowledge on this island, and properties are being sold in the millions. But this one has not, and it's taken twenty-something months and still hasn't been sold.

> So . . . as it's structured, I cannot confirm this plan. I do not agree with a plan administrator. As I pointed out the practice in the district is twenty-four months. This plan, the effective date doesn't start until you actually have a [buyer], so the debtor's granted fourteen days to modify the plan . . . that is consistent with today's order and to acquire the votes. Maybe Firstbank will agree because . . . there's a deadline that the debtor has now to sell the property.

Lastly, in support of his application to appoint a plan administrator, the Debtor insisted the proposed compensation would not hurt distributions in the case. After hearing from the U.S. Trustee, the court denied the application.

Consistent with its oral rulings, the bankruptcy court entered the Order, which provided: "In the event that the property is not sold by July 20, 2025, the stay will be lifted in favor of Firstbank Puerto Rico without any further order or hearing. In the meantime, the Debtor is ordered to make adequate protection payments to Firstbank in the amount of $4,800.00 monthly." The Order continued: "As to the confirmation hearing, the Debtor is ordered, within 14 days, to file an amended plan in accordance with today's order. A new hearing on confirmation will be scheduled after the amended plan is filed." Finally, the Order denied the application for appointment of a plan administrator.

The Debtor did not file an amended plan as ordered and instead commenced this appeal.

## **APPELLATE JURISDICTION**

The Panel has jurisdiction to hear appeals from final orders of the bankruptcy court. See 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 38

6

(2020). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." Ritzen Grp., 589 U.S. at 37 (citing Bullard v. Blue Hills Bank, 575 U.S. 496, 501 (2015)). In contrast, an interlocutory order "only decides some intervening matter pertaining to the cause, and . . . requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998) (quoting In re Am. Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir. 1985)). The final judgment rule serves "a strong congressional policy against piecemeal review, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." In re Cont'l Inv. Corp., 637 F.2d 1, 3 (1st Cir. 1980) (citations omitted).

"[T]he requirement of finality is to be given a 'practical rather than a technical construction.'" Watson v. Boyajian (In re Watson), 403 F.3d 1, 6 (1st Cir. 2005) (quoting Gillespie v. U.S. Steel Corp., 379 U.S. 148, 152 (1964)). "Determining whether the bankruptcy court's order is final depends on the nature of the order and its surrounding circumstances." Pilch v. Bareham, No. 1:08-CV-272, 2008 WL 2758351, at *4 (W.D. Mich. July 14, 2008), aff'd, 332 F. App'x 314 (6th Cir. 2009). Because an order may be final in part and interlocutory in part, see McGann v. Jagow (In re McGann), BAP No. CO-24-007, 2024 WL 2198844, at *1 (B.A.P. 10th Cir. Apr. 22, 2024), the Panel will examine the finality of each ruling in the Order.

## I.     The Order Is Final as to the Stay Relief Ruling

The Order provided that "[i]n the event that the property is not sold by July 20, 2025, the stay will be lifted in favor of Firstbank Puerto Rico without any further order or hearing," and directed the Debtor to make monthly adequate protection payments. Firstbank argues that the order is not final because the bankruptcy court did not lift the stay but stated *it would* lift the stay

if the Debtor did not sell the property by July 20, 2025. Firstbank's interpretation does not pass muster.

Typically, a bankruptcy court's order granting relief from the automatic stay is a final, appealable order. See Pinpoint IT Servs., LLC v. Landrau Rivera (In re Atlas IT Exp. Corp.), 761 F.3d 177, 182 (1st Cir. 2014). Such orders are final because "[n]othing more need be done by the . . . bankruptcy court on the matter of the automatic stay." Id. (quoting Tringali v. Hathaway Mach. Co., 796 F.2d 553, 558 (1st Cir. 1986)).

The same reasoning applies to the Order's ruling on stay relief. Although stay relief was contingent on the property remaining unsold by the bankruptcy court's deadline, if that occurred, the stay would lift without further action by the court. In other words, the stay relief ruling was self-executing because the bankruptcy court did not need to do anything more. See id. Therefore, the Order is final as to the stay relief ruling and the Panel has jurisdiction to hear the appeal with respect to it.

## II. The Order Is Final as to the Ruling Directing the Debtor to File an Amended Plan

The Order required the Debtor to file an amended plan "in accordance with" the Order within 14 days. The bankruptcy court's comments at the hearing make clear that this ruling was driven by the stay relief ruling, and the Panel's determination on the stay relief ruling will dictate the outcome on the amended plan ruling. Since finality depends on the nature of the order and its surrounding circumstances, Pilch, 2008 WL 2758351, at *4, and should be given a practical rather than a technical construction, In re Watson, 403 F.3d at 6, the Panel will treat the Order as a final order with respect to the amended plan ruling and consider the appeal with respect to it.

**III.     The Order Is Interlocutory as to the Ruling Denying Appointment of a Plan Administrator**

The Panel reaches a different conclusion on the finality of the bankruptcy court's denial of the application to appoint a plan administrator. Whereas the court's ruling on the amended plan is dependent on the stay relief ruling, the court's comments suggested it disapproved of the proposed plan administrator because of the additional costs as well as its incompatibility with the timeline for stay relief. More significantly, the plan administrator ruling only decided an intervening component of the Plan. Because further steps are necessary for the court to adjudicate confirmation of any plan, the Order is not a final order as to its denial of the Debtor's application to appoint a plan administrator. See In re Bank of New Eng. Corp., 218 B.R. at 646.

Upon determining that an order is interlocutory, the Panel may decide whether to exercise its discretionary authority to grant leave to appeal under 28 U.S.C. § 158(a)(3) by considering the standard governing district courts' certification of interlocutory appeals to the circuit courts under 28 U.S.C. § 1292(b). See id. at 652. This requires examining the following factors: (1) whether the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) whether an immediate appeal from the order might materially advance the ultimate termination of the litigation. See Bailey v. United States (In re Bailey), 592 B.R. 400, 409 (B.A.P. 1st Cir. 2018). All three elements must be established. See WM Cap. Partners 53, LLC v. Allied Fin., Inc., No. 17-2015 (ADC), 2018 WL 1704474, at *2 (D.P.R. Mar. 30, 2018).

The third element is not met here. The plan administrator was merely one component of the Plan, which is no longer being considered for confirmation. Because the final plan may or may not contemplate a plan administrator, reviewing the court's denial of the application at this stage will not materially advance plan confirmation or promote judicial economy. Cf. Chi. Ins.

9

Co. v. Thorpe Insulation Co., No. CV 08-1020 DSF, 2008 WL 11338766, at \*3 (C.D. Cal. July 14, 2008) (declining to exercise discretionary review of an interlocutory order appointing a future claims representative in a chapter 11 case). Since at least one of the 28 U.S.C. § 1292(b) factors is not met here, the Panel need not examine the other two factors and will not exercise its discretionary authority to grant leave to appeal under 28 U.S.C. § 158(a)(3). See WM Cap. Partners 53, LLC, 2018 WL 1704474, at \*2.

For the foregoing reasons, the Panel does not have jurisdiction to consider the appeal of the Order as to its denial of the application to appoint a plan administrator.

## STANDARD OF REVIEW

The standard to be applied in reviewing an order granting relief from the automatic stay "depends on the basis upon which such relief was granted." In re Kupperstein, No. 18-11772-LTS, 2020 WL 1939719, at \*5 (D. Mass. Apr. 22, 2020) ("Kupperstein I"), aff'd, Kupperstein v. Schall (In re Kupperstein), 994 F.3d 673 (1st Cir. 2021) ("Kupperstein II"). Although the bankruptcy court did not discuss "cause" in the Order or during the hearing, Firstbank confirmed at the hearing that it only sought stay relief under § 362(d)(1), which provides for relief from the stay "for cause, including lack of adequate protection." Accordingly, the Panel will infer that the bankruptcy court granted relief from the automatic stay under § 362(d)(1) for cause.

Where the bankruptcy court decided to lift the automatic stay for cause, the decision is reviewed for abuse of discretion. Kupperstein I, 2020 WL 1939719, at \*5; see also Mercado v. Combined Invs., LLC (In re Mercado), 523 B.R. 755, 761 (B.A.P. 1st Cir. 2015). "The bankruptcy court abuses its discretion if it ignores a material factor deserving of significant weight, relies upon an improper factor or makes a serious mistake in weighing proper factors." Kupperstein II, 994 F.3d at 678 (citation modified).

10

## DISCUSSION

### I. Relief from the Automatic Stay Under § 362(d)(1)

Subject to certain exceptions not applicable here, § 362 provides that the filing of a bankruptcy petition stays the "commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor . . . ." 11 U.S.C. § 362(a)(1). "The intention is to give the debtor breathing room by stopping all collection efforts, all harassment, and all foreclosure actions." Kupperstein II, 994 F.3d at 677 (citation modified).

Section 362(d)(1) provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1). "The Bankruptcy Code does not define 'cause' for purposes of § 362(d)(1), leaving the court to consider what constitutes cause based on the totality of the circumstances in each particular case." Azevedo v. U.S. Bank Nat'l Ass'n (In re Azevedo), BAP No. MW 17-051, 2018 WL 7377880, at *6 (B.A.P. 1st Cir. Aug. 29, 2018) (citing In re Podmostka, 527 B.R. 51, 54 (Bankr. D. Mass. 2015)). Accordingly, "[w]hat constitutes 'cause' has evolved through case law." In re Bos. Language Inst., Inc., 593 B.R. 381, 395 (Bankr. D. Mass. 2018) (citing Goya Foods, Inc. v. Unanue-Casal (In re Unanue-Casal), 159 B.R. 90, 96 (D.P.R. 1993), aff'd sub nom., Unanue v. Unanue-Casal (In re Unanue-Casal), 23 F.3d 395 (1st Cir. 1994) (unpublished table decision)). The bankruptcy court has "broad discretion" in assessing cause for stay relief under § 362(d)(1). Ortega Berrios v. Torres Reyes (In re Torres Reyes), No. BAP PR 23-033, 2024 WL 5342527, at *6 (B.A.P. 1st Cir. Dec. 17, 2024) (citing Sonnax Indus., Inc. v. Tri Component Prods. Corp., (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1288 (2d Cir. 1990)).

11

The movant has the "initial burden to come forward with prima facie evidence showing that cause exists." Id. at *8 (citation modified). Once the moving party establishes cause, "the burden then 'shifts to the debtor to demonstrate that he is entitled to the stay.'" Id. (quoting In re Unanue-Casal, 159 B.R. at 95). "If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied." Id. (quoting Lapierre v. Advanced Med. Spa Inc. (In re Advanced Med. Spa Inc.), BAP No. EC-16-1087-KuMaJu, 2016 WL 6958130, at *4 (B.A.P. 9th Cir. Nov. 28, 2016)) (other citation omitted). In a hearing concerning stay relief under § 362(d), the movant has the burden of proof on the debtor's equity in property, while the party opposing stay relief has the burden of proof on all other issues. 11 U.S.C. § 362(g).

## II. The Order Granting Stay Relief Is Not Adequately Supported By This Record

The bankruptcy court granted Firstbank relief from the automatic stay without further order or hearing if the Debtor failed to sell the property by July 20, 2025, and ordered the Debtor to make monthly adequate protection payments to Firstbank in the meantime. The court's only other statements before issuing the stay relief ruling were: its acknowledgment that the parties agreed an equity cushion existed; that debtors generally have 18 to 24 months to sell property "in this district"; and that the Debtor had been in bankruptcy approximately 18 months. The court did not respond to the Debtor's request for clarification of the finding of cause to lift the stay. While the court is not required to consider any particular factor in determining cause, on this record the Panel can only conclude that the bankruptcy court's stay relief ruling was based on the Debtor's failure to sell the property within 18 to 24 months.

In 1988, the U.S. Supreme Court rejected the argument that a creditor's delay in foreclosing on its collateral can, by itself, be cause for stay relief by reasoning that a creditor's right to immediate foreclosure of its collateral was not an interest entitled to adequate protection.

12

In United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 369, 382 (1988), the Court determined that, since an undersecured creditor was not entitled to interest on its claim under § 362(d)(1), that creditor was not entitled to adequate protection payments to compensate that creditor for the delay in foreclosing on its collateral caused by the automatic stay. In so holding, the Court rejected the notion that the "interest in property" protected by § 362(d)(1) included a secured party's right to immediate foreclosure. Id. at 371.

Since Timbers, where courts have found delay to constitute cause for stay relief under § 362(d)(1), it is typically in conjunction with a finding of bad faith. See, e.g., JE Livestock, Inc. v. Wells Fargo Bank, N.A. (In re JE Livestock, Inc.), 375 B.R. 892, 897-98 (B.A.P. 10th Cir. 2007) (concluding the bankruptcy court did not abuse its discretion by finding cause for stay relief based on the debtor's delay in the case and a finding of bad faith); In re Chalek, 667 B.R. 76, 82 (Bankr. S.D.N.Y. 2025) (ruling that the debtor's "pattern of deliberate abuse—using chapter 7 not for its intended purpose . . . but simply to delay eviction—constitute[d] bad faith, which [wa]s cause for relief from the automatic stay under section 362(d)(1)"); In re Kinard, No. C/A 01-03621-W, 2001 WL 1806039, at *7 (Bankr. D.S.C. Nov. 16, 2001) (granting stay relief under § 362(d)(1) because of the debtor's bad faith filing based on, among other things, evidence of intent to delay or frustrate secured creditors' legitimate efforts to enforce their rights).

The record in this case demonstrates that the bankruptcy court relied solely on the debtor's delay in selling the property to grant stay relief under § 362(d)(1). The court did not discuss why that delay in the context of this case would constitute cause. The foregoing case law establishes that delay, alone, is insufficient. Although delay may support a finding of bad faith that could constitute cause, the bankruptcy court made no findings about the Debtor's bad faith.

13

This record is insufficient for the Panel to conclude that the court implicitly relied on other grounds to find cause under § 362(d)(1). For example, the court did not discuss whether Firstbank's interest in the property was adequately protected even though Firstbank agreed that some equity cushion existed, acknowledged the parties' valuation dispute, and ordered the Debtor to make adequate protection payments to Firstbank. A sufficient equity cushion is a form of adequate protection, Baybank-Middlesex v. Ralar Distribs., Inc., 69 F.3d 1200, 1203 (1st Cir. 1995), as are periodic cash payments to a creditor, to the extent the automatic stay (or certain other circumstances not relevant here) results in a decrease in the value of the creditor's interest in the property, see 11 U.S.C. § 361(1). However, there was no evidence before the court at the hearing and the court made no findings about the value of the property, the extent of the equity cushion, or the rate at which it might be declining. The Panel is thus left without insight regarding whether the equity cushion and the adequate protection payments factored into the court's determination that there was cause for stay relief under § 362(d)(1).

The Panel concludes that this record is insufficient to support the bankruptcy court's grant of stay relief. The court did not identify a legal standard for the determination of cause, nor did it reference the fact-specific or "totality of the circumstances" analysis required. See In re Azevedo, 2018 WL 7377880, at *6. The only circumstance the court expressly relied on was the Debtor's inability to sell the property within the district practice of allowing debtors 18 to 24 months to sell property. For these reasons, the Panel cannot conclude that the bankruptcy court weighed the "proper factors" in the § 362(d)(1) analysis. See Kupperstein II, 994 F.3d at 678. Accordingly, the ruling must be reversed.

**III.    The Ruling Directing the Debtor to File an Amended Plan Must Be Reversed**

As previously discussed, the ruling that the Debtor must file an amended plan "in accordance with" the Order directly followed from the stay relief ruling.  Because the Panel has determined the stay relief ruling is not supported on this record and must be reversed, the ruling requiring the Debtor to file an amended plan must likewise be reversed.  See Disher v. Citigroup Glob. Mkts., Inc., 486 F. Supp. 2d 790, 798 (S.D. Ill. 2007) ("On the reversal of a judgment, order, or decree by the [reviewing court], a dependent order, judgment, or proceeding, ancillary and accessory to it, shares its fate and falls with it.") (alteration in original) (citation omitted).

## CONCLUSION

Based on the foregoing analysis, the Panel: (1) **REVERSES** and **REMANDS** the Order as to the stay relief ruling; (2) **REVERSES and REMANDS** the Order as to the ruling directing the Debtor to file an amended plan; and (3) concludes that it lacks jurisdiction to review the Order as to its denial of the application to employ a plan administrator, and **DISMISSES** the appeal as to this ruling.